OPINION
{¶ 1} Plaintiff-appellant, Kathleen M. Sharp ("Sharp"), appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, The Andersons, Inc. ("The Andersons"), in this slip-and-fall negligence action. For the following reasons, we affirm.
 {¶ 2} This action arises as the result of injuries Sharp sustained when she slipped and fell on a red grape in the checkout aisle of The Andersons store in Dublin, Ohio, on the afternoon of December 22, 2002. After proceeding through the checkout aisle and paying for her purchases, Sharp began to leave without her groceries. The cashier, Eric Bell, called to Sharp, who slipped and fell when she turned to collect her shopping bag from the checkout counter.
 {¶ 3} On May 5, 2003, Sharp filed a complaint against The Andersons in the Franklin County Court of Common Pleas. Sharp voluntarily dismissed her original complaint on May 24, 2004, and re-filed her complaint on December 21, 2004, alleging a single claim of negligence. In its answer, The Andersons denied Sharp's allegations of negligence. On September 26, 2005, The Andersons moved for summary judgment. Sharp filed a memorandum contra The Andersons' motion for summary judgment on September 30, 2005, and The Andersons filed a reply memorandum on October 11, 2005. The trial court granted The Andersons' motion for summary judgment on December 30, 2005, and entered its final judgment on January 4, 2006. Sharp filed a timely notice of appeal, asserting a single assignment of error:
THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT.
 {¶ 4} Appellate review of summary judgments is de novo. Koosv. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. Maust v.Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107; Brown
at 711. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. Coventry Twp.v. Ecker (1995), 101 Ohio App.3d 38, 41-42.
 {¶ 5} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66.
 {¶ 6} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v.Burt (1996), 75 Ohio St.3d 280, 292. Once the moving party meets its initial burden, the non-movant must set forth specific facts demonstrating a genuine issue for trial. Id. at 293. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-359, quoting Norris v. Ohio Std. Oil Co.
(1982), 70 Ohio St.2d 1, 2.
 {¶ 7} Bearing these standards in mind, we turn to Sharp's negligence claim. As the Supreme Court of Ohio has explained, "`[l]egal liability for negligence is based upon conduct involving unreasonable risk to another, which must be established by affirmative evidence tending to show that such conduct falls below the standard represented by the conduct of reasonable men under the same or similar circumstances.'" Johnson v. WagnerProvision Co. (1943), 141 Ohio St. 584, 589, quoting Englehardtv. Philipps (1939), 136 Ohio St. 73, paragraph two of the syllabus. The mere occurrence of an injury does not give rise to an inference of negligence. Rather, "there must be direct proof of a fact from which the inference can reasonably be drawn."Parras v. Standard Oil Co. (1953), 160 Ohio St. 315, 319. "A probative inference for submission to a jury can never arise from guess, speculation or wishful thinking." Id.
 {¶ 8} To establish a cause of action for negligence, a plaintiff must show the existence of a duty, breach of that duty, and an injury proximately caused by the breach. Texler v. D.O.Summers Cleaners Shirt Laundry Co. (1998), 81 Ohio St.3d 677,680. A shopkeeper owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that invitees are not unreasonably exposed to unnecessary danger. Paschal v. Rite Aid Pharmacy, Inc. (1985),18 Ohio St.3d 203. However, the shopkeeper is not an insurer of an invitee's safety and owes invitees no duty to protect them from open and obvious dangers on the property. Id. at 203-204, citingSidle v. Humphrey (1968), 13 Ohio St.2d 45, paragraph one of the syllabus.
 {¶ 9} To recover from a shopkeeper in a slip-and-fall negligence action, a plaintiff must establish:
1. That the defendant through its officers or employees was responsible for the hazard complained of; or
2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or
3. That such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.
Johnson at 589. Sharp does not allege that The Andersons created or had actual knowledge of the hazard presented by the grape on the floor. Rather, Sharp relies on the third prong of the Johnson test, arguing that the danger posed by the grape existed for a sufficient length of time to reasonably justify the inference that The Andersons' failure to warn against it or remove it was attributable to a lack of ordinary care.
 {¶ 10} In granting summary judgment in favor of The Andersons, the trial court found that the record lacked evidence that The Andersons caused the grape to be on the floor or had actual or constructive knowledge of the grape's presence before Sharp's fall. The trial court also concluded that the grape was an open and obvious hazard with respect to which The Andersons owed Sharp no duty. On appeal, Sharp argues that genuine issues of material fact remain as to whether The Andersons should have known of the hazardous condition before her fall and whether The Andersons breached its duty of ordinary care by failing to remove it. Sharp further contends that the trial court erred in determining that the grape was an open and obvious hazard.
 {¶ 11} When a plaintiff alleges negligence based upon the "existence of a defect or hazard, actual or constructive notice of the defect is an essential element in perfecting the claim that the owner or occupier of the premises failed to comply with the requirement of reasonable care." Murphy v. K-Mart (Mar. 24, 1998), Franklin App. No. 97APE08-1129, citing Heckert v. Patrick
(1984), 15 Ohio St.3d 402. Sharp contends that the evidence demonstrates a genuine issue of material fact as to whether The Andersons had constructive notice of the grape before her fall.
 {¶ 12} A plaintiff cannot prove constructive notice of a hazard without a factual basis that the hazard existed for a sufficient time to enable the exercise of ordinary care.Peterson v. Giant Eagle, Inc., Summit App. No. 21772,2004-Ohio-1611, at ¶ 15. In Presley v. Norwood (1973),36 Ohio St.2d 29, 32, the Ohio Supreme Court stated:
* * * If a plaintiff cannot show that a defendant had actual knowledge of an existent hazard, evidence as to the length of time the hazard had existed is necessary to support an inference that defendant had constructive notice. In order to support such an inference, the jury must be presented with evidence sufficient to indicate that a dangerous condition has "* * * existed for a sufficient time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care." Johnson, supra, at 584; 2 Restatement of the Law, Torts 2d, Appendix, 192. See, also, 62 A.L.R. 2d 6, at 33 et seq.
In cases involving constructive notice, "evidence of how long the hazard existed is mandatory in establishing a duty to exercise reasonable care." Harrison v. The Andersons, Inc.
(June 23, 2000), Lucas App. No. L-99-1368, citing Combs v. FirstNatl. Supermarkets, Inc. (1995), 105 Ohio App.3d 27, 30.
 {¶ 13} "Where no evidence shows how a * * * substance came to be on the floor or how long it had been there, a plaintiff cannot show that the store breached a duty of ordinary care." Barker v.Wal-Mart Stores, Inc. (Dec. 31, 2001), Franklin App. No. 01AP-658. Thus, in cases where a plaintiff has slipped and fallen on produce in a supermarket, Ohio appellate courts have routinely affirmed summary judgments or directed verdicts in favor of defendants where the plaintiff fails to produce evidence of how the produce came to be on the floor and how long it had been there before the plaintiff's fall. See Peterson; Harrison;Braun v. Russo's, Inc. (June 1, 2000), Cuyahoga App. No. 76273;Rhoades v. Big Bear Grocery Stores, Inc. (Dec. 23, 1975), Franklin App. No. 75AP-326.
 {¶ 14} Sharp contends that the record before the trial court contained competent evidence demonstrating a genuine issue of material fact as to how the grape came to be on the floor and how long it remained there before she fell. Specifically, Sharp relies on The Andersons' point of sale records from December 22, 2002, detailing transactions in checkout aisle nine, where Sharp fell, from 4:01 p.m. to 5:06 p.m. The point of sale records establish that customers purchased red grapes in checkout aisle nine at 4:08 p.m. (40 minutes before Sharp's fall), 4:35 p.m. (13 minutes before Sharp's fall), and 4:49 p.m. (one minute after Sharp's fall). Sharp maintains that a jury must decide whether the grape in question originated from the grapes sold at 4:08, 4:35 or 4:49 p.m. The Andersons, on the other hand, argues that it is unknown whether the grape upon which Sharp slipped originated from grapes purchased at 4:08, 4:35, 4:49 p.m., some other time on the date in question or from some other source entirely. The Andersons contends that, without pure speculation, a trier of fact cannot decide how the grape came to be on the floor and how long it was there before Sharp's fall.
 {¶ 15} In support of her position that the record contained evidence from which a jury could infer constructive notice, Sharp relies on Schon v. Natl. Tea Co. (1971), 28 Ohio App.2d 49, andFox v. Ben Schechter Co. (1937), 57 Ohio App. 275. In Fox,
the plaintiff slipped and fell on decayed or partially decayed fruit and vegetable matter in the main aisle of a grocery store. The Ninth District Court of Appeals concluded that there was evidence in the record from which a jury could reasonably infer that it was more probable that the defendant itself created the hazardous condition. The court went on to state that, even if the jury did not make such an inference, the jury could conclude that the defendant should have been aware of the hazardous condition based on evidence that the hazardous condition existed for at least 15 minutes before the plaintiff fell. Accordingly, the court concluded that the defendant was not entitled to summary judgment.
 {¶ 16} In Schon, the plaintiff sued the defendant store after falling on grapes in the defendant's produce section. The issue on appeal was whether the grapes had been on the floor for a sufficient time to infer a lack of ordinary care. After distinguishing cases holding that the existence of a hazard for two to three minutes before a fall does not demonstrate a lack of ordinary care, the Seventh District Court of Appeals noted, "there is evidence that the grapes on the floor were there at least ten to fifteen minutes, and probably much longer." Schon
at 53. The court went on to hold:
In an action by a customer against the owner of a grocery store to recover damages for personal injuries alleged to have been sustained by slipping on fruit matter on the floor of defendant's store, testimony that the foreign substance had remained on the floor at least ten or fifteen minutes; that the floor had last been swept one hour and forty-five minutes prior to the accident; that three employees of defendant were present in the store; that there were relatively few people in the store during at least one hour's time before the accident; and that the area where the customer fell was dirty or messy, is substantial evidence that the employees of the store owner knew that the substance was there, or, in the exercise of ordinary care, should have discovered and removed it before it caused injury to the customer.
Id. at paragraph four of the syllabus. Based on such evidence, the court reversed the trial court's directed verdict.
 {¶ 17} Both Fox and Schon are readily distinguishable from the case presently before us. First, both cases involved facts, not present here, from which the jury could conclude that the defendant should have been aware of the hazardous condition. In Fox, the court accepted as "sound" the plaintiff's reliance on evidence that several store clerks and customers were in attendance in the 20-by-50-foot room where the plaintiff slipped.Fox at 277. The Schon court noted and relied on the small number of customers in the store and the dirty, messy condition of the area where the plaintiff fell. In contrast, Sharp's fall occurred on a busy shopping day, three days before Christmas, and there is no evidence that the surrounding area was dirty or messy. More importantly, in both Fox and Schon, the record contained competent evidence of the length of time the hazard existed before the plaintiff's fall. In Schon, there was testimony that the plaintiff noticed the messy condition of the floor in the produce section 10 to 15 minutes before she fell. InFox, there was evidence that, when the plaintiff and her husband entered the store 15 minutes before her fall, the plaintiff's husband noticed debris in the vicinity where the plaintiff subsequently fell. Unlike Fox and Schon, and despite Sharp's protestations to the contrary, the record here contains no evidence of how long the grape was on the floor prior to Sharp's fall.
 {¶ 18} To avoid summary judgment, Sharp was required to present evidence demonstrating an issue of fact as to how long the grape had been on the floor before she slipped on it; she could not rely on speculation. See Orndorff v. Aldi, Inc.
(1996), 115 Ohio App.3d 632, 637. "Mere speculation does not create a material issue of fact." Wike v. Giant Eagle, Inc.,
Portage App. No. 2002-P-0049, 2003-Ohio-4034, at ¶ 32. In her deposition, Sharp offered no testimony as to where the grape came from and had "no idea" how long the grape had been on the ground prior to her fall. (Sharp Depo. at 29.) Nevertheless, Sharp argues, based on the point of sale records establishing three red grape purchases within approximately 40 minutes of her fall, that the jury must determine whether the grape upon which she slipped originated from the grapes purchased at 4:08, 4:35 or 4:49 p.m.[1] We disagree.
 {¶ 19} In Braun, supra, the Eighth District Court of Appeals rejected a slip-and-fall plaintiff's speculation regarding how grapes came to be on the supermarket floor. The plaintiff "did not know how the grapes came to be on the floor, how long they were on the floor, whether they had been on the floor long enough that someone should have noticed them, or whether the grapes were squashed prior to her stepping on them." Id. However, the plaintiff argued that the hazard posed by grapes on the floor could only have been created by the store:
* * * [N]ot selling the grapes in sealed packaging; negligently unloading, transporting, or stocking the produce; negligence in the way the grapes were displayed; not providing non-slip surfaces on the floor of the produce section; not providing notice to its customers that fallen produce could be a hazard within the produce section and store; not sweeping its floors in a more timely fashion. * * *
Id. In response, the court stated:
* * * While the grapes on the floor of the produce aisle * * * could have been placed there as a result of the multiple scenarios advanced by [the plaintiff], such a conclusion is pure speculation; there is no direct evidence to suggest that this, in fact, occurred. It is equally reasonable to conclude that the grapes came to be on the floor through the actions of a fellow customer on a busy shopping day, a theory which was advanced by store employees.
Id. Thus, the court determined that speculation regarding the source of the grapes, based on several possible scenarios, was insufficient to demonstrate a genuine issue of material fact.
 {¶ 20} Similarly, in Louderback v. Big Bear Stores Co./BigBear Bakeries (Oct. 2, 1996), Pike App. No. 96CA569, a plaintiff slipped and fell on a puddle of water near a produce display fitted with an automatic sprayer. The produce manager stated that water from the sprayer could reach the floor in a variety of ways, and the plaintiffs argued that the automatic sprayer more likely than not caused the wet floor in the produce area. The court called the plaintiffs' inference or conclusion that the automatic produce sprayer caused the wet floor "merely a guess" and found that the plaintiffs "failed to establish a nexus between the sprayer system and the wet, slippery floor." Id. The court stated that the plaintiffs "cannot base their inferred conclusion upon speculation or conjecture." Id. Accordingly, the court affirmed the trial court's entry of summary judgment in favor of the defendant.
 {¶ 21} This court has also rejected speculation as to how a hazardous condition came about and how long it existed prior to a plaintiff's fall. In Rhoades, this court affirmed a directed verdict in favor of a defendant grocery store where there was no evidence as to how a lettuce leaf, upon which the plaintiff fell, got onto the floor of the defendant's delivery area or how long the lettuce leaf had been on the floor prior to the plaintiff's fall. There, evidence demonstrated that Big Bear employees unloaded lettuce from trucks in the delivery area and prepared the lettuce for sale by removing the outer leaves and wrapping the lettuce in cellophane. The record also contained evidence that customers walked through the delivery area to use the store's facilities and that others came into the area to obtain lettuce leaves for rabbits. Nevertheless, this court stated:
* * * [I]n this case there is no evidence as to how the lettuce leaf upon which the plaintiff-appellant slipped had gotten on the floor of the defendants' store. We feel that the jury, under the facts of this case, would have had to speculate as to who had in fact placed the lettuce leaf on the floor. Further there was no evidence as to how long the lettuce leaf had laid on the floor prior to plaintiff's fall; and, additionally, the jury would have had to speculate on the time element in its application of an inference of knowledge.
Id.
 {¶ 22} Sharp's position here, that the grape fell to the floor from one of the grape purchases made at checkout aisle nine before her fall, is pure speculation. We agree that, if the record contained evidence that the grape had been on the floor for 13 or 40 minutes before Sharp fell, a jury question may exist as to whether such time reasonably justifies the inference that The Andersons failed to exercise reasonable care. However, the record contains no such evidence. Although it is possible that the grape fell to the floor during one of the grape purchases prior to Sharp's fall, the record lacks any evidence to establish that fact. Moreover, even if there were such evidence, there is no evidence from which a jury could determine, without pure speculation, which of the grape sales resulted in a grape falling to the floor. The record contains no evidence upon which a jury could base such a determination. Thus, submission of this issue to a jury would improperly require the jury to engage in complete speculation. "An inference of negligence does not arise from mere guess, speculation, or wishful thinking, but rather can arise only upon proof of some fact from which such inference can reasonably be drawn." Goodin v. The Kroger Co. (June 21, 1993), Butler App. No. CA93-01-009, citing Parras at paragraph two of the syllabus. Jury speculation cannot be a substitute for evidence which Sharp had the burden of producing. See Tenorio v.The Kroger Co. (June 26, 1992), Defiance App. No. 4-92-9. We find the record devoid of any evidence as to how the grape upon which Sharp fell came to rest on the floor and how long it had been there before Sharp fell. Therefore, Sharp failed to demonstrate a genuine issue of material fact as to whether The Andersons had constructive notice of the grape.
 {¶ 23} Sharp also argues that a genuine issue of material fact remained as to who was responsible for ensuring invitees' safety at The Andersons on the date of her fall, based on a purported conflict between cashier Eric Bell's deposition testimony and the affidavit of The Andersons store manager, Gail Thompson. Sharp contends that Mr. Bell failed to inspect the area surrounding his cash register when he returned from his break at 4:32 p.m., even though his job responsibilities required him to do so. Mr. Bell did testify that cashiers are supposed to check their stations at the beginning of a shift and that he did not believe he had done so on December 22, 2002. However, Mr. Bell did not testify that cashiers were also required to check their stations upon returning from a mid-shift break as he did shortly before Sharp's fall. In her affidavit, Thompson states that, because Mr. Bell's register would have been active when he returned from his break on the busy day in question, his duties would have been to keep his register line moving. Ms. Thompson stated: "Because the management and other front-end supervisors were expediting the front end, Mr. Bell would not have had responsibility for checking the aisle unless there was a specific incident — such as a spill or a breakage — that would have necessitated an inspection (and a clean up) of the aisle." (Thompson Aff. at ¶ 8.) Upon review, we find no conflict between Mr. Bell's deposition testimony and Ms. Thompson's affidavit.
 {¶ 24} Sharp next argues that, had Mr. Bell and management personnel discharged their duties by inspecting Mr. Bell's checkout aisle, they would have noticed the grape and removed the hazard presented thereby. However, whether Mr. Bell or management personnel would have or should have noticed the grape by inspecting the checkout aisle cannot be determined without establishing how long the hazard had been in existence. Absent evidence of when the hazardous condition came into existence, Sharp cannot demonstrate that The Andersons had constructive knowledge of the hazard and cannot prevail on her negligence claim.
 {¶ 25} Because we conclude that Sharp failed to demonstrate a genuine issue of material fact as to whether the hazard posed by the grape existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a lack of ordinary care, we need not address Sharp's contention that the trial court erred in concluding that the grape was an open and obvious hazard.
 {¶ 26} Construing the evidence most strongly in favor of Sharp, we find that the trial court correctly entered summary judgment in favor of The Andersons. No genuine issue of material fact exists, and The Andersons is entitled to judgment as a matter of law. Accordingly, we overrule Sharp's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Petree and McGrath, JJ., concur.
[1] We reject Sharp's argument that she could not have logically slipped on a grape purchased one minute after her fall. It is no less likely that the grape fell from the shopping cart of the customer behind Sharp in the checkout aisle than that the grape fell from grapes purchased 13 or 40 minutes prior to her fall. As Eric Bell explained, holes in the carts are large enough for grapes to fall through, and the grape "could have fallen and it could have actually come after Dr. Sharp had come through my line." (Bell Depo. at 39.)