OPINION *Page 2 
{¶ 1} The plaintiff-appellant, Kathleen J. Williams, appeals the judgment of the Logan County Common Pleas Court granting summary judgment against her. For the reasons herein, we affirm the trial court's judgment.
 {¶ 2} On or about May 21, 2003, Kathleen and the plaintiff-appellee, Dennis Williams, visited the store of the defendant-appellee, The Lowe's of Bellefontaine, also known as Lowe's Companies, Inc., located in Bellefontaine, Ohio. The couple was shopping for flowerpots in the outdoor garden and lawn center. As they were looking at the display of flowerpots, Kathleen slipped and fell onto the cement floor. Dennis helped Kathleen get up and they reported the incident to both a cashier and a manager. The manager took photographs of Kathleen and the place where she fell, and Kathleen was subsequently treated for injuries to the left side of her body. *Page 3 
 {¶ 3} On May 11, 2005, Kathleen and Dennis filed a complaint against Lowe's and ten John Does in the Logan County Common Pleas Court. Kathleen asserted one claim of negligence, and Dennis asserted one claim for loss of consortium. Lowe's timely filed an answer, preserving the "open and obvious doctrine" and other defenses. On July 14, 2006, Lowe's filed Kathleen's deposition and a motion for summary judgment, and Kathleen and Dennis filed a memorandum in opposition on August 7, 2006. Lowe's filed a reply memorandum, to which it attached a portion of Kathleen's responses to Lowe's interrogatories.
 {¶ 4} On September 6, 2006, the trial court filed its judgment entry, finding that the hazard was open and obvious, that the attendant circumstances doctrine was inapplicable, and that summary judgment in favor of Lowe's was appropriate. Kathleen appeals the trial court's judgment and asserts two assignments of error for our review.
 First Assignment of Error Summary judgment was innappropriate [sic] where the defendant-appellee failed to produce any evidence that the hazardous condition at issue was "open and obvious."
 Second Assignment of Error The trial court errorred [sic] by failing to apply the "attendant circumstances doctrine" in ruling on summary judgment. *Page 4 
 {¶ 5} Appellate courts review a grant of summary judgment de novo, independently and without deference to the trial court's decision.Adkins v. Chief Supermarket, 3rd Dist. No. 11-06-07,2007-Ohio-772, at ¶ 7, citing Conley-Slowinski v. Superior Spinning andStamping Co. (1998), 128 Ohio App.3d 360, 363, 714 N.E.2d 991;Hasenfratz v. Warnement, 3rd Dist. No. 1-06-03,2006-Ohio-2797, citing Lorain Nat'l. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 572 N.E.2d 198. "A grant of summary judgment will be affirmed only when the requirements of Civ.R. 56(C) are met."Adkins, at ¶ 7. The party moving for summary judgment must establish: (1) that there are no genuine issues of material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Id., citing Civ.R. 56(C);Horton v. Harwick Chem. Corp., 73 Ohio St.3d 679, 1995-Ohio-286,653 N.E.2d 1196, paragraph three of the syllabus. In ruling on a motion for summary judgment, a court may not "weigh evidence or choose among reasonable inferences * * * ." Adkins, at ¶ 8, citing Jacobs v.Racevskis (1995), 105 Ohio App.3d 1, 7, 663 N.E.2d 653. Rather, the court must consider the above standard while construing all evidence in favor of the non-movant. Jacobs, at 7. *Page 5 
 {¶ 6} The party moving for summary judgment must identify the basis of the motion to allow the non-movant a "meaningful opportunity to respond." Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 116,526 N.E.2d 798. In its motion, the moving party "must state specifically which areas of the opponent's claim raise no genuine issue of material fact" and must support its assertion with affidavits or other evidence as allowed by Civ.R. 56(C). Mitseff, at 115, citing Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, citingHamlin v. McAlpin Co. (1964), 175 Ohio St. 517, 519-520, 196 N.E.2d 781;Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264. If the moving party fails to meet its burden, summary judgment is inappropriate; however, if the moving party meets its initial burden, the non-moving party has a "reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial * * * ." Dresher, at 294.
 {¶ 7} To withstand a motion for summary judgment in a negligence action, the non-movant "must show the existence of a duty, a breach of the duty, and an injury proximately resulting therefrom." Texler v. D.O.Summers Cleaners Shirt Laundry Co., 81 Ohio St.3d 677, 680,1998-Ohio-602, 693 N.E.2d 271, citing Fed. Steel Wire Corp. v. RuhlinConstr. Co. (1989), 45 Ohio St.3d 171, 173, 543 N.E.2d 769, 772, citingMenifee v. Ohio Welding Prod, Inc. (1984), 15 Ohio St.3d 75, 77,472 N.E.2d 707; Di Gildo v. Caponi (1969), 18 Ohio St.2d 125, *Page 6 247 N.E.2d 732; Feldman v. Howard (1967), 10 Ohio St.2d 189,226 N.E.2d 564. If a defendant can show it owed no duty to the plaintiff, there can be no liability for negligence. Brown v. Whirlpool Corp., 3rd Dist. No. 9-04-12, 2004-Ohio-5101, at ¶ 9, quotingKraner v. Legg, 3rd Dist. No. 10-2000-04, 2000-Ohio-1907.
 {¶ 8} In a slip and fall case, the court must first determine what duty of care the defendant owed the plaintiff. Adkins, at ¶ 10, citingHodge v. K-Mart Corp. (Jan. 19, 1995), 4th Dist. No. 93CA528, unreported. There is no dispute in this case that Kathleen was a business invitee. The Ohio Supreme Court has defined a business invitee as "`a business visitor that is, one rightfully on the premises of another for purposes in which the possessor of the premises has a beneficial interest.'" Provencher v. Ohio Dept. of Transp. (1990),49 Ohio St.3d 265, 265-266, 551 N.E.2d 1257, quoting Scheibel v.Lipton (1951), 156 Ohio St. 308, 328-329, 102 N.E.2d 453. A "presumption of negligence does not arise simply because an invitee falls while on the premises of a shopkeeper." Adkins, at ¶ 9, citing Hodge, citingParras v. Standard Oil Co. (1953), 160 Ohio St. 315, 116 N.E.2d 300. Instead, the business owner must exercise ordinary care "to protect the invitee by maintaining the premises in a safe condition."Provencher, at 266, citing Presley v. Norwood (1973), 36 Ohio St.2d 29,31, 303 N.E.2d 81. A shopkeeper must warn business invitees of latent or concealed dangers if it knows *Page 7 
or has reason to know of the hidden dangers. Jackson v. KingsIsland (1979), 58 Ohio St.2d 357, 359, 390 N.E.2d 810.
 {¶ 9} However, the open and obvious doctrine, if applicable, is a complete bar to a negligence claim. Armstrong v. Best Buy Co.,Inc., 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at syllabus. The open and obvious doctrine provides that "a premises-owner owes no duty to persons entering those premises regarding dangers that are open and obvious." Armstrong, at ¶ 5, citing Sidle v. Humphrey (1968),13 Ohio St.2d 45, 233 N.E.2d 589, paragraph one of the syllabus. "The rationale underlying this doctrine is `that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.'" Id., quoting Simmers v. Bentley Constr. Co., 64 Ohio St.3d 642, 644,1992-Ohio-42, 597 N.E.2d 504. "The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." Id., at ¶ 13, citing Ferrell, Emerging Trends in Premises Liability Law: Ohio's Latest Modification Continues to Chip Away at Bedrock Principles (1995), 21 Ohio N.U.L.Rev. 1121, 1134. *Page 8 
 {¶ 10} In her brief, Kathleen contends that the cause of her fall was the algae growing in the puddle and not the puddle itself. Kathleen urges us to adopt the holding in Mikula v. Tailors (1970),24 Ohio St.2d 48, 263 N.E.2d 316. Kathleen contends that the holding inMikula is applicable here because the algae within the puddle was not discernible due to the water covering it.
 {¶ 11} In its brief, Lowe's contends that the existence of algae within the water is inconsequential because throughout her deposition, Kathleen testified that she fell on both the water and the algae. Lowe's argues that Kathleen knew the water was slippery, that Kathleen was a regular customer at its store, that Kathleen had walked around puddles on other occasions to prevent a fall, and that based on this record, the water and algae were open and obvious dangers.
 {¶ 12} Attached to Lowe's reply memorandum was a copy of Interrogatory 20, which asked Kathleen to "[describe how the accident alleged herein occurred." (Def.'s Reply Memo., Aug. 14, 2006, at Ex. A, ¶ 20). Kathleen responded, "I was walking through the isles [sic] in the garden area looking for pots to plant flowers. When I was looking at items on the shelves to the left of my, my left foot slid in a pool of water overalgae ." (Emphasis added.). (Def.'s Reply Memo., at Ex. A, ¶ 20). In her deposition, Kathleen stated that her "left foot slid in the water andalgae out from under me." (Emphasis added.). (Williams, Kathleen, Dep., Jul. 14, 2006, at 38:2-3). She identified Exhibit B, attached to her *Page 9 
deposition, as a photograph showing the "area where [she] fell, thewater over algae next to the pots." (Emphasis added.). (Williams, Dep., at 27:22-23). When counsel asked Kathleen to mark on Exhibit B the spot where she fell, Kathleen identified an area in the middle of the puddle and stated, "I'm going to assume it was this area right in here * * * ." (Williams, Dep., at 28:5-6; Ex.B). She then described the spot where she fell as "within the area that is covered with water over algae." (Emphasis added.). (Williams, Dep., at 28:15-16).
 {¶ 13} In describing the hazard itself, Kathleen estimated that it was approximately three feet by four feet in size. (Williams, Dep., at 28:20-23). Kathleen stated the puddle consisted of standing water, between one-half and three-quarters of an inch deep, but that the puddle "feathered out towards the edges." (Williams, Dep., at 29:2-8). She also testified that the damp area of the concrete was darker in color than the surrounding dry concrete. (Williams, Dep., at 29:14-17). Then, the following exchange took place:
 Q: And you mentioned that within that area there was some algae, did I understand that correct?
 A: Yes. It was very slippery.
 Q: Was the algae contained within the damp, wet area?
 A: Yes, it was to my knowledge within — underneath the water.
(Williams, Dep., at 29:18-24). This tiny segment of testimony is what Kathleen relies upon to show that she fell only on the algae and to create a genuine issue of material fact. *Page 10 
 {¶ 14} Kathleen also testified about any obstructions. Kathleen stated that she had been carrying her purse over her right shoulder, that nothing obstructed her view of the puddle, and that the area was visible at the time she fell. (Williams, Dep., at 34). Finally, Kathleen testified that on prior visits to Lowe's, she had seen puddles in the outdoor garden center, and she took care to avoid the puddles for fear of falling or in order to prevent her feet and pants from getting wet. (Williams, Dep., at 32). She also stated that had she seen the puddle on this occasion, she could have stepped around it. (Williams, Dep., at 37).
 {¶ 15} We do not doubt that Kathleen has sustained injuries from her fall, and we certainly do not require pedestrians to scrutinize the ground with every step they take; however, the evidence in this case is clear that the hazard, consisting of a water puddle and algae, was open and obvious, and Lowe's could reasonably expect customers to avoid it to protect themselves. The evidence is consistent that Kathleen fell on the water and the algae, not the algae alone. The evidence is undisputed concerning the visibility of the hazard. There was no evidence that the water obscured the algae; there was no evidence to indicate how much algae was in the water; and there was no evidence that the water was cloudy or that the water was too deep to see any algae growing on the floor. In fact, the photograph clearly shows some smaller, darker areas within the damp spot, which would be consistent with either dirt or the growth of algae below the water. *Page 11 
(Williams, Dep., at Ex. B). Even if the algae was not visible, Kathleen never testified as such.
 {¶ 16} The shred of testimony Kathleen relies upon to defeat Lowe's motion does not help her case. The question concerned the "area" where she fell, and her answer indicates that "it" was slippery. This answer does not create a genuine issue of material fact, as her testimony as a whole indicates that the water and the algae were slippery. This is not a case where Kathleen saw the hazard and believed that the puddle contained only water. Her testimony is clear that she did not see the puddle of water, and therefore, she did not see the algae growing entirely within the puddle before she fell. However, due to the open and obvious nature of the hazard, Kathleen was able to avoid the hazard to protect herself, even if she did not do so.
 {¶ 17} This court has previously affirmed a grant of summary judgment based on the open and obvious doctrine where the evidence was undisputed that the hazard was visible. Diddy v. Lion, Inc. (Nov. 19, 1991), 3rd Dist. No. 3-91-9, unreported. In Diddy, the hazard was a puddle in a parking lot which contained a substance that appeared to be transmission fluid. Because the plaintiff testified as to the open and obvious nature of the hazard, this court affirmed the trial court's order granting summary judgment. Both Diddy and this case differ from the Mikula case, which Kathleen relies upon. In Mikula, the judgment appealed was *Page 12 
not a grant of summary judgment. More importantly, the court was faced with a hole that was seven inches deep and covered with snow in a parking lot. Mikula is but one in a line of cases dealing with the natural accumulation of snow and ice in Ohio. The facts of this case, particularly the difference between an accumulation of snow versus an accumulation of water, are significantly different from Mikula. Because there is no genuine issue of material fact, we hold that the hazard in this case was open and obvious, and the trial court did not err in so finding.
 {¶ 18} Kathleen next argues that even if the hazard was open and obvious, there were attendant circumstances, which negate the open and obvious doctrine. Kathleen contends that the flowerpots on display were attendant circumstances, which increased the danger of the water and algae. An attendant circumstance is:
 "a factor that contributes to the fall and is beyond the control of the injured party. * * * The phrase refers to all facts relating to the event, such as time, place, surroundings or background and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event. * * * However, `[b]oth circumstances contributing to and those reducing the risk of the defect must be considered.'"
Benton v. Cracker Barrel Old Country Store, Inc., 10th Dist. No. 02AP-1211, 2003-Ohio-2890, at ¶ 17, quoting Sack v. Skyline Chili,Inc., Warren App. No. CA2002-09-101, 2003-Ohio-2226, at ¶ 20; citingBurstion v. Chong-Hadaway, Inc. (Mar. 2, 2000), Franklin App. No. 99AP-701, unreported. See also McGuire v. Sears, Roebuck Co. (1996),118 Ohio App.3d 494, 499, 693 N.E.2d 807; *Page 13 
quoting Stockhauser v. Archdiocese of Cincinnati (1994),97 Ohio App.3d 29, 33-34, 646 N.E.2d 198 (attendant circumstances must also "`divert the attention of the pedestrian, significantly enhance the danger of the defect, and contribute to the fall.'").
 {¶ 19} To show an attendant circumstance and to negate the open and obvious doctrine, Kathleen relied upon the photograph of the puddle and her deposition, which Lowe's had previously filed. The photograph, attached to Kathleen's memorandum as Exhibit A and attached to her deposition as Exhibit B, shows a shelving unit in the top, left corner, but only the bottom shelf is visible in the photograph. On display on the bottom shelf, which rests slightly above the floor, are several large flowerpots. In the bottom, right corner of the photograph, is a shelving unit constructed of concrete blocks and wood where live plants are on display. A concrete floor is visible in the entire picture. Where the moisture covers the floor, the concrete is darker. Near the shelving in the top, left corner, the concrete is very dark, but it fades into a lighter color as it spreads to the right. The sun illuminates the right half of the photograph, and the left half is in the shade. Due to the different lighting, the wet concrete in the shade is even darker than the wet concrete in the sun. Kathleen testified that the manager took the photograph of the area approximately five to ten minutes after she fell. (Williams Dep., 26-27). *Page 14 
 {¶ 20} In her deposition, Kathleen testified that she and Dennis were in the process of building a new home, so she visited Lowe's approximately two times per week, and that she had shopped at Lowe's between 100 and 500 times. (Williams, Dep., at 30-31). Of the time she spent at the store, Kathleen stated she visited the garden center approximately one-third of the time, and she had observed damp or wet spots before. (Williams, Dep., at 31-32).
 {¶ 21} On the date she fell, Kathleen testified that the weather was "nice, fair." (Williams, Dep., at 24). Kathleen stated that nothing was obstructing her view and that the damp area was visible. (Williams, Dep., at 34). As to the merchandise, Kathleen testified that the shelves were approximately three to four feet high from the floor. (Williams, Dep., at 37). She stated she was looking at either the second or third shelf when she fell, and Dennis had been walking to her right. (Williams, Dep., at 35, 37).
 {¶ 22} On this record, there is no genuine issue of material fact. The merchandise was located in an outdoor garden center where one might expect water to lay on the floor, either caused by an earlier rain or by the watering of live plants. The shelving unit holding the flowerpots appears to be of a more permanent nature than the shelves holding the live plants. Kathleen's testimony was clear that she was looking at the flowerpots, and there was no testimony that she was otherwise distracted. Other than Dennis, there was no evidence of other *Page 15 
individuals in the vicinity, and Kathleen was familiar with the garden center from previous shopping trips. Neither the shelving nor the flowerpots were in a conspicuous or surprising area. There is no evidence in the record that the flowerpot display was unusual or out of the ordinary.
 {¶ 23} When people go into a store, they normally expect to find merchandise on display. On these facts, we cannot hold that the location of the merchandise unreasonably increased the normal risk associated with shopping in an outdoor garden area. As appellee noted in its brief, if the mere existence of merchandise were enough to negate the open and obvious doctrine, the exception would swallow the rule. Therefore, the attendant circumstances doctrine is inapplicable.
 {¶ 24} The movant for summary judgment, Lowe's, has met its burden of establishing that there are no genuine issues of material fact, that the movant is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. The first and second assignments of error are overruled. *Page 16 
 {¶ 25} The judgment of the Logan County Common Pleas Court is affirmed.
Judgment affirmed.
 ROGERS, P.J., and PRESTON, J., concur. *Page 1