[Cite as *Novik v. Kroger Co.*, 2011-Ohio-5737.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

CLOVA NOVIK,

    PLAINTIFF-APPELLANT,                  CASE NO.  9-11-21

    v.

THE KROGER COMPANY,                  O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Marion County Common Pleas Court
Trial Court No. 2009 CV 0818

**Judgment Affirmed**

Date of Decision:  November 7, 2011

APPEARANCES:

    *Nickolas D. Owens and Jennifer L. Myers*  for Appellant

    *Kevin R. Bush and Nathaniel W. Jackson*  for Appellee

**SHAW, J.**

{¶1}   Plaintiff-appellant, Clova Novik ("Novik"), appeals the May 16, 2011 judgment of the Common Pleas Court of Marion County, Ohio, granting summary judgment in favor of the defendant-appellee, The Kroger Company ("Kroger"), and dismissing her complaint.

{¶2}   The facts relevant to this appeal are as follows.  On September 7, 2007, as Novik was entering one of Kroger's store locations on Marion-Waldo Road in Marion, Ohio, she fell to the floor and injured her left wrist, left ankle, and left foot.  The area of her fall was a vestibule, which was accessed from the outside by two different sets of doors.  Once inside the vestibule, one had to enter through another set of doors in order to access the sales floor.  At the threshold of the outside entrance doors, were four, square heavy-duty rubber mats, approximately ¾" thick, that were each set in a metal frame and abutted one another to form one larger square.  At the time of her injury, the outside entrance doors were set in an open position rather than continuously opening and closing upon approach.

{¶3}   When Novik fell, a couple of customers came to her aid.  Shortly thereafter, the store manager, Lynne Spencer ("Spencer"), was called to the vestibule area and waited with Novik until an ambulance arrived.  While lying on the floor, Novik attempted to ascertain how she fell and noticed the mats that she

walked across upon entering the first set of doors were "humped up" on their edges, particularly on the corners where the four mats came together. At that point, she realized that she had tripped over one of these "humped up" edges.

{¶4} Novik was transported to a local hospital by ambulance, x-rays were taken of her wrist and foot that revealed nothing was broken, and she was diagnosed with a sprained wrist and ankle. However, she continued to experience pain in her foot and was not able to walk. After seeing her family physician and a podiatrist, she was referred to an orthopedic surgeon, who ordered an MRI of her foot. The surgeon discovered Novik had broken a number of small bones in her foot and torn tendons and ligaments in her ankle. She underwent surgery on her ankle and foot, and a metal plate was placed inside her foot with screws. She later underwent another surgery to remove two of the screws in the metal plate that were causing pain. She then had yet another surgery to remove the metal plate and to place a new one.

{¶5} On September 2, 2009, Novik filed a complaint against Kroger for negligence. Kroger filed its answer, and the matter proceeded to discovery. During discovery, Novik served Kroger with interrogatories, a request for admissions, and a request for the production of documents. Among the items requested by Novik were any and all written reports or other documents relating to the area, flooring, or condition of the flooring where Novik was injured. Kroger

promptly provided its responses, including that this particular request was overbroad and sought information that violated attorney-client privilege and/or the work-product rule. In addition, Kroger's response specifically stated that no incident report had been prepared as a result of Novik's fall.

{¶6} On March 23, 2010, Kroger filed a motion for summary judgment in its favor. In this motion, Kroger maintained that any hazards created by the rubber mats were open and obvious, that any defect in the condition of these mats was insubstantial and trivial so as to create no duty on the part of Kroger to Novik, and that there was no evidence that Kroger had actual or constructive notice of any such hazard.

{¶7} On April 6, 2010, Spencer, the Kroger store manager at the time of the incident, was deposed by counsel for Novik.[1] In this deposition, Spencer testified that she or one of the assistant managers prepared an incident report of Novik's fall, which was contrary to Kroger's previous response to Novik's request for production of documents and interrogatories.[2] After this deposition, Kroger supplemented its response to exclude its previous answer that no incident report was prepared.

---

[1] At the time of her deposition, Spencer was the manager of another Kroger location in Mt. Vernon, Ohio, having been transferred to that location in August of 2009.

[2] Spencer was unable to recall whether she personally prepared the incident report or whether one of her assistant managers did, but she did testify that she last knew of the incident report being located in a filing cabinet in the Marion-Waldo Road Kroger store.

{¶8} On April 14, 2010, Novik filed a motion to compel Kroger to provide the incident report that was created by Spencer. Novik also filed a motion for an extension of time to respond to Kroger's motion for summary judgment. Shortly thereafter, the trial court granted Novik's request for an extension. However, Kroger filed a memorandum in opposition to Novik's motion to compel, asserting that it did not locate any incident report of Novik's fall and that even if it could be located, it was protected by attorney-client privilege and the work-product rule. Kroger filed a supplement to this memorandum on April 23, 2010, and attached the affidavit of Erin Driskell, Kroger's lead paralegal, who averred that she exhausted all reasonable methods to locate the incident report at issue and that she was unable to find any such incident report.

{¶9} Novik filed her memorandum in opposition to Kroger's motion for summary judgment on September 13, 2010. Kroger filed its reply to Novik's memorandum in opposition on September 27, 2010. On May 16, 2011, the trial court granted summary judgment in favor of Kroger, found all other pending motions moot as a result, and dismissed Novik's complaint. This appeal followed, and Novik now asserts three assignments of error for our review.

**FIRST ASSIGNMENT OF ERROR**

**THE TRIAL COURT ABUSED ITS DISCRETION, THEREBY COMMITTING REVERSIBLE ERROR, BY RULING ON, AND GRANTING, KROGER'S MOTION FOR SUMMARY**

**JUDGMENT WITHOUT RULING ON MS. NOVIK'S MOTION TO COMPEL DISCOVERY OF AN ACCIDENT REPORT AND WITHOUT RULING ON HER MOTION FOR SANCTIONS.**

## SECOND ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER THE SAME-COLORED, DISPLACED RUBBER MAT WAS AN "OPEN-AND-OBVIOUS" CONDITION UNDER THE CIRCUMSTANCES.**

## THIRD ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST CONCERNING WHETHER KROGER BREACHED ITS DUTY OF ORDINARY CARE BY FAILING TO WARN ITS INVITEES OF THE HAZARDOUS CONDITION, OF WHICH IT HAD ACTUAL KNOWLEDGE.**

{¶10} For ease of discussion, we elect to address these assignments of error out of the order in which they were presented. Further, as the second and third assignments of error are interrelated, we will address them together.

*Second and Third Assignments of Error*

{¶11} In the second assignment of error, Novik asserts that the trial court erred in granting summary judgment in Kroger's favor because a genuine issue of material fact exists as to whether the condition of the rubber mats was open and obvious. She also contends in this assignment of error that even if the condition of

the mats was open and obvious, there were attendant circumstances that would negate the application of the open and obvious doctrine. In her third assignment of error, Novik further asserts that summary judgment was not proper because genuine issues of material fact existed as to whether Kroger breached its duty of care to her by failing to warn her of the hazardous condition of the mats when it had actual knowledge of this condition.

{¶12} An appellate court reviews a grant of summary judgment de novo, without any deference to the trial court. *Conley-Slowinski v. Superior Spinning & Stamping Co.* (1998), 128 Ohio App.3d 360, 363, 714 N.E.2d 991; see, also, *Hasenfratz v. Warnement*, 3rd Dist. No. 1-06-03, 2006-Ohio-2797, citing *Lorain Nat'l. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 572 N.E.2d 198. A grant of summary judgment will be affirmed only when the requirements of Civ.R. 56(C) are met. This requires the moving party to establish that there are no genuine issues of material fact, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); see *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, paragraph three of the syllabus, 1995-Ohio-286, 653 N.E.2d 1196.

{¶13} The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus. The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 1996-Ohio-107, 662 N.E.2d 264. Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the non-moving party to produce evidence on any issue which that party bears the burden of production at trial. See Civ.R. 56(E).

{¶14} In ruling on a summary judgment motion, a court is not permitted to weigh evidence or choose among reasonable inferences, rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in favor of the non-moving party. *Jacobs v. Racevskis* (1995), 105 Ohio App.3d 1, 7, 663 N.E.2d 653. Additionally, Civ.R.56(C) mandates that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

{¶15} To prevail in a negligence action, a plaintiff must demonstrate that: (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached

that duty, and (3) the defendant's breach proximately caused the plaintiff to be injured. *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, at ¶ 10, citations omitted. The applicable duty is determined by the relationship between the landowner and the plaintiff when the alleged negligence occurs in a premises-liability context. *Id.*, citing *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315, 1996-Ohio-137, 662 N.E.2d 287. Here, the parties do not dispute that Novik was a business invitee of Kroger.

{¶16} "A shopkeeper ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at ¶ 5, citing *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 480 N.E.2d 474 and *Jackson v. Kings Island* (1979), 58 Ohio St.2d 357, 390 N.E.2d 810. In a premises-liability action, the plaintiff can prove the defendant's breach of duty if any one of three conditions is satisfied:

> **(1) the defendant, through its officers or employees, was responsible for the hazard complained of; (2) at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or to remove it promptly; or (3) such danger existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.**

*Gouhin v. Giant Eagle*, 10th Dist. No. 07AP-548, 2008-Ohio-766, at ¶ 8, citing, *Sharp v. Anderson's, Inc.*, 10th Dist. No. 06AP81, 2006-Ohio-4075, at ¶ 7, citing *Johnson v. Wagner Provision Co.* (1943), 141 Ohio St. 584, 589, 49 N.E.2d 925. Further, "[w]hen it is shown that the owner had superior knowledge of the particular danger which caused the injury, liability attaches because, in such a case, invitees may not reasonably be expected to protect themselves from a risk they cannot fully appreciate." *Hairston v. Gary K. Corp.*, 8th Dist. No. 87199, 2006-Ohio-5566, at ¶ 10, citing *Mikula v. Slavin Tailors* (1970), 24 Ohio St.2d 48, 263 N.E.2d 316; *LaCourse v. Fleitz* (1986), 28 Ohio St.3d 209, 503 N.E.2d 159; see, also, *Cochran v. Ohio Auto Club* (Oct. 3, 1996), 3rd Dist. No. 9-96-33, 1996 WL 562055.

{¶17} However, a shopkeeper does not owe invitees a duty to warn of any dangers on his property that are open and obvious. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 5. As such, the open and obvious doctrine "acts as a complete bar to any negligence claims." *Id*. The rationale for this doctrine is that "the open and obvious nature of the hazard itself serves as a warning." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 1992-Ohio-42, 597 N.E.2d 504. The Supreme Court of Ohio summarized the case law on the open-and-obvious doctrine in the following manner:

> **"Where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises."** *Armstrong v. Best Buy Co., Inc.*, **99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, syllabus, approving and following** *Sidle v. Humphrey* **(1968), 13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589. "[T]he owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves."** *Simmers v. Bentley Constr. Co.* **(1992), 64 Ohio St.3d 642, 644, 597 N.E.2d 504. Thus, when a plaintiff is injured by an open and obvious danger, summary judgment is generally appropriate because the duty of care necessary to establish negligence does not exist as a matter of law.** *Armstrong* **¶ 14-15.**

*Lang*, 2009-Ohio-2495, at ¶ 11.

{¶18} Nevertheless, this Court has previously held that "attendant circumstances may exist which distract an individual from exercising the degree of care an ordinary person would have exercised to avoid the danger, and 'may create a genuine issue of material fact as to whether a hazard is open and obvious.'" *Stewart v. AMF Bowling Ctrs., Inc.*, 3rd Dist. No. 5-10-16, 2010-Ohio-5671, ¶ 15, quoting *Aycock v. Sandy Valley Church of God*, 5th Dist. No. AP 09 0054, 2008-Ohio-105, ¶ 26. An attendant circumstance is

> **"a factor that contributes to the fall and is beyond the control of the injured party. * * * The phrase refers to all facts relating to the event, such as time, place, surroundings or background and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event. * * * However, '[b]oth circumstances contributing to and those reducing the risk of the defect must be considered.'"**

*Williams v. Lowe's of Bellefontaine*, 3rd Dist. No. 8-06-25, 2007-Ohio-2045, ¶ 18, quoting *Benton v. Cracker Barrel Old Country Store, Inc.*, 10th Dist. No. 02AP1211, 2003-Ohio-2890, ¶ 17, quoting *Sack v. Skyline Chili, Inc.*, 12th Dist. No. CA2002-09-101, 2003-Ohio-2226, ¶ 20. "But, attendant circumstances do not include any circumstance existing at the moment of a fall, unless the individual was distracted by an unusual circumstance created by the property owner." *Stewart*, 2010-Ohio-5671, at ¶ 15 (citations omitted).

{¶19} Here, Novik maintains that while the existence of a duty is a question of law for a court to decide, whether a hazard is open and obvious requires an extremely fact-specific inquiry that *may* involve genuine issues of material fact for a fact-finder to resolve. She further asserts that in this case, a genuine issue of material fact exists as to whether the "hump" in the rubber mats was an open and obvious hazard, which would preclude a grant of summary judgment. In support of this contention, Novik maintains that the mats were nearly identical in color to the rest of the floor and that they were displaced rather than flush with the floor in their normal resting position, both of which made this hazard far less open and obvious than Kroger contends.

{¶20} During Novik's deposition she testified that she regularly shopped at this Kroger location, had been there over 100 times, and had walked on the mats at issue a number of times. She further explained that the store always has displays

of some sort on the outside of the store and also in the vestibule. Novik testified that she went to Kroger that day in early September to buy a card for her husband. It was a weekday at approximately 5:00 p.m., and it was sunny and warm. As she walked towards the store, she looked at a display of fall mums on the outside of the door and noticed that the automatic doors were in the open position rather than continuously opening and closing as people came and went from the store. She assumed the doors had been placed in an open position to aid the Kroger employee she saw gathering carts outside to bring into the store.

{¶21} Novik's intent upon entering the store was to go immediately to the card area. As she began to enter the vestibule, Novik noticed a man on the telephone to her left and then another display, an outdoor swing that was sitting on top of an unidentified object, just past the man who was on the phone. Novik fell and injured herself as she traversed the mats, which were located on the inside of the vestibule at the threshold of the entrance. When she fell, the man on the phone and a woman who had entered the store immediately after Novik came to her aid. The man who had been on the phone identified himself as a paramedic and told Novik not to move. However, after some time on the floor, Novik propped herself up to look around and noticed the mats had curled up on their corners and were "humped up" in various areas where they came together.

{¶22} Novik also identified a number of photographs showing the area of her fall, including close-up photographs of the mats. The photographs show that the four mats are positioned to form one large "square" mat by placing them so they are two mats wide and two mats deep. The width of this "square" is slightly larger than the combined width of the two automatic sliding doors to which the mat "square" abuts. Each of the four mats is completely surrounded by what appears to be a metal band so that the completed "square" is also outlined by this metal trim. However, one can readily observe that this "square" consists of four individual mats. The photographs also show that some of the edges of the mats, including the area between two of them where Novik indicated she fell, are "humped up" and dislodged from the metal trim pieces, and some of the corners of these mats are somewhat curled upward.

{¶23} While the mats and the vestibule flooring are very similar in their grayish coloring, the metal trim is much brighter than the mats and the flooring. Thus, one can also readily observe a distinct difference in the mats and the flooring. In addition, in each photograph the mats have a distinctive, *straight* striping pattern while the vestibule flooring has a much less distinctive *diagonal* striping pattern that is noticeable only in the photographs taken from inside the vestibule or close-up. These striping patterns further distinguish the mats from the flooring.

**{¶24}** Unquestionably, Novik knew the mats were in the vestibule, having been in this store in excess of 100 times and walking on these mats. While no one testified regarding the specific lighting conditions in the vestibule, Novik entered the store from the outside, which was sunny, and the doors, which were glass, were fully open. Thus, there was no evidence that she was unable to see the condition of the mats had she looked or that there was anything present to otherwise obstruct or distort her view of the mats. Although the mats and flooring were similar in color, the metal trim and distinctive striping pattern plainly distinguish the two from one another. Therefore, Novik's own testimony and the photographs, which she identified, establish that there is no genuine issue of material fact that the danger posed by the mats was open and obvious had Novik looked down and that Kroger, consequently, owed her no duty.

**{¶25}** Novik next asserts that even if the hazard was open and obvious, there were attendant circumstances that would negate the open and obvious doctrine. In support of this assertion, Novik argues that the display of mums outside of the store and the swing on display inside of the vestibule were placed there by Kroger with the intent to draw its customers' attention to these items and entice them to buy what was on display, thereby increasing Kroger's sales figures. Therefore, Novik claims that because she was distracted by these displays as Kroger intended, the open and obvious doctrine does not apply.

**{¶26}** In light of the evidence previously discussed, there is no genuine issue of material fact. No one disputes that the mums and swing displays were present at the time of Novik's fall or that she looked at these displays as she was entering the store. Other than Novik's fall, there was no evidence that anyone else had ever been injured by these mats, either on the same day as Novik's fall or prior to her fall. The displays were not in surprising areas of the store, Novik knew that there were always displays in these areas, and the displays themselves were not unusual or otherwise out of the ordinary. Furthermore, there is no evidence that the displays were positioned in a manner that obstructed Novik's view of the mats as she was entering the store.

**{¶27}** This Court has previously stated that "[w]hen people go into a store, they normally expect to find merchandise on display. * * * if the mere existence of merchandise were enough to negate the open and obvious doctrine, the exception would swallow the rule." *Williams*, 2007-Ohio-2045, at ¶ 23. It also is commonly understood by both retailers and customers that in nearly every setting, retailers intend to market merchandise in a way that catches customers' eyes and entices them to buy. This intent on the part of retailers does not subject them to per se liability in every circumstance when a customer fails to notice an open and obvious hazard and injures himself.

{¶28} Given the facts present in this case, reasonable minds could not conclude that the location or set-up of the displays was an unusual circumstance or that they *unreasonably* increased the *normal risk* associated with entering a grocery store. As such, we cannot conclude that an attendant circumstance existed that would negate the application of the open and obvious doctrine. Thus, the duty of care necessary to establish negligence does not exist in this case as a matter of law.

{¶29} Having determined that Novik failed to demonstrate that Kroger owed her a duty of care, the issue raised in the third assignment of error regarding whether Kroger breached a duty to Novik by failing to warn her of the hazardous condition of which it had actual knowledge is moot, i.e., if Kroger had no duty to Novik, no breach could occur.

{¶30} For all of these reasons, we find that the trial court committed no error in granting summary judgment in favor of Kroger. Accordingly, the second and third assignments of error are overruled.

*First Assignment of Error*

{¶31} Novik asserts in her first assignment of error that the trial court erred in granting summary judgment in favor of Kroger without first ruling on Novik's motion to compel the discovery of the incident report and without ruling on her motion for sanctions. Novik contends that the trial court abused its discretion by

determining that the motions to compel and for sanctions were moot. More specifically, she maintains that she suffered harm because the incident report *might* have proven her case because it *likely* contained statements of actual knowledge by Kroger of the hazard in question, *likely* contained a more specific description of the displaced mats, which may give a clearer indication of how open and obvious this hazard was, and *likely* would provide more insight about the attendant circumstances.

**{¶32}** The parties agree that during discovery Kroger informed Novik that an incident report of her fall was not prepared and that Spencer later testified in her deposition that either she or one of the assistant managers prepared an incident report. Kroger, through the affidavit of Erin Driskell, maintains that it exhausted all reasonable methods to locate the incident report at issue and that it was unable to find any such incident report. Kroger also argues that even if it could locate the incident report that it was not discoverable because of the attorney-client privilege and the work-product rule, as this report was prepared because many slip and fall incidents lead to litigation. However, Novik maintains that the testimony of Spencer demonstrated that the incident report was prepared as a part of Kroger's normal business operations, in accordance with Kroger's policy, and not at the request and/or direction of any attorney. Thus, she contends that it is not work-product and not subject to any privilege.

**{¶33}** Trial courts have broad discretion over the conduct of discovery, and a trial court's order concerning the conduct of discovery will not be reversed absent an abuse of discretion. *Toney v. Berkemer* (1983), 6 Ohio St.3d 455, 453 N.E.2d 700. In addition, the abuse of discretion must materially prejudice the opposing party. *Bland v. Graves* (1993), 85 Ohio App.3d 644, 659, 620 N.E.2d 920. "In exercising its discretion in a discovery matter, the court balances the relevancy of the discovery request, the requesting party's need for the discovery, and the hardship upon the party from whom the discovery was requested." *Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App.3d 78, 85, 523 N.E.2d 902. "However, where a trial court's refusal to allow discovery is improvident and prejudicially affects the substantial rights of the parties, an appellate court will rectify the trial court's abuse of discretion." *Smith v. Klein* (1985), 23 Ohio App.3d 146, 151, 492 N.E.2d 852, citing *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 58, 295 N.E.2d 65.

**{¶34}** Obviously, we do not condone any party destroying, intentionally or otherwise, discoverable materials or refusing to provide discoverable materials in its possession, and while this Court may find Kroger's position to be suspect on this issue, the above authority clearly places the matter within the prerogative of the trial court to determine. However, given the undisputed evidence, particularly the photographs of the area, Novik has not shown how this report would have

created genuine issues of material fact that the condition of the mats was not open and obvious or that there were attendant circumstances.

{¶35} Thus, even assuming arguendo that Novik was entitled to the incident report as part of discovery and that the trial court abused its discretion in not compelling Kroger to provide it or to determine whether Kroger engaged in the spoliation of evidence and to impose an appropriate sanction, this report is not outcome determinative. While Novik speculates on what this report may contain, her testimony and, more importantly, the photographs, which speak for themselves better than any person could, demonstrate that the condition of the mats was open and obvious. Moreover, Novik's *undisputed* testimony describing the displays evidences that there were no attendant circumstances that would negate the application of the open and obvious doctrine in this case. Accordingly, the first assignment of error is overruled.

{¶36} For all of these reasons, the judgment of the Common Pleas Court of Marion County, Ohio, is affirmed.

*Judgment Affirmed*

**ROGERS, P.J., and PRESTON, J., concur.**

**/jlr**