COSTNER CONSULTING COMPANY, Appellant,

v.

U.S. BANCORP, d.b.a. U.S. Bancorp Office Equipment Finance Services and/or U.S. Bancorp Business Equipment Finance Group, Appellee.

[Cite as *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–947.

Decided Aug. 4, 2011.

Manos, Martin, Pergram & Dietz Co., L.P.A., and Dennis L. Pergram, for appellant.

Bernlohr, Niekamp & Weisensell, L.L.P., Mark W. Bernlohr, and Sarah B. Baker, for appellee.

---

FRENCH, Judge.

{¶ 1} Plaintiff-appellant, Costner Consulting Company ("Costner"), appeals the Franklin County Court of Common Pleas' summary judgment in favor of defendant-appellee, U.S. Bancorp Business Equipment Finance Group ("US Bancorp"), on Costner's claims to collect on an account and for breach of contract. For the following reasons, we reverse that judgment.

{¶ 2} In its complaint, Costner alleged that it was formerly known as Digital Imaging Systems Company ("DISC"), a vendor/supplier in the business of selling and servicing office equipment, including copiers, and that it is entitled to pursue this action for monies allegedly owed to DISC by US Bancorp. Costner's complaint asserted claims on account and for breach of an express or implied contract. Costner's claims arise out of a finance lease executed by Toshiba Financial Services ("Toshiba") and Organized Living, Inc. ("Organized Living"). The lease documents include a value lease agreement, executed on July 13, 2004, and a lease supplement, signed by Organized Living on December 22, 2004, and by Toshiba on February 4, 2005 (collectively, the "lease"). A copy of the lease, which relates to certain identified copying equipment, is attached to Costner's complaint.

{¶ 3} R.C. 1310.01(A)(7) defines a "finance lease" in accordance with UCC 2A–103. The official comment to R.C. 1310.01(A)(7) quotes the UCC to explain as follows:

A finance lease is the product of a three party transaction. The supplier manufactures or supplies the goods pursuant to the lessee's specification, perhaps even pursuant to a purchase order, sales agreement or lease agreement between the supplier and the lessee. After the prospective finance lease is negotiated, a purchase order, sales agreement, or lease agreement is entered into by the lessor (as buyer or prime lessee) or an existing order, agreement or lease is assigned by the lessee to the lessor, and the lessor and the lessee then enter into a lease or sublease of the goods.

In a finance lease, the lessor does not select, manufacture, or supply the goods, but acquires the goods in connection with the lease. R.C. 1310.01(A)(7). The lease here identifies Toshiba as the lessor, Organized Living as the customer/lessee, and DISC as the supplier. It is undisputed that Toshiba assigned the lease to US Bancorp.

{¶ 4} In simple terms, Toshiba agreed to provide equipment, services, and supplies to Organized Living in exchange for Organized Living's monthly lease payments. The lease permitted Toshiba to assign its service and supply obligations, and DISC performed those obligations on behalf of Toshiba and billed US Bancorp for payment. The lease also entitled Organized Living to a specified number of black-and-white and color copies per month and established per-copy rates for overages, i.e., copies in excess of the specified monthly number. Toshiba and/or US Bancorp billed Organized Living for the monthly lease payments, plus any applicable amount for overages, as determined by meter readings conducted by DISC.

{¶ 5} With respect to DISC's relationship with Toshiba and/or US Bancorp, Costner alleged as follows:

[Toshiba], as a lessor * * *, engaged dealers/suppliers (such as DISC) to provide labor, parts, drums, developer, toner, supplies (other than paper), etc. (hereinafter referred to as "goods and services") for the * * * copiers that it leased to its customers, and the dealers/suppliers would bill [Toshiba] directly. This arrangement was the arrangement and agreement entered into between DISC and [Toshiba], and pursuant to that agreement DISC provided Organized Living, as lessee under the [Lease], with goods and services in Franklin County, Ohio on the account of, and pursuant to the agreement of, [Toshiba].

An affidavit by Costner's president, William Costner, states that DISC and Toshiba agreed that DISC would provide supplies, service calls, and preventative maintenance to which Organized Living was entitled under the lease, and that DISC would make readings to determine Organized Living's overages. DISC billed US Bancorp for the amount of Organized Living's overages and a flat rate for DISC's maintenance services. Mr. Costner states that DISC's right to payment was not contingent upon US Bancorp's being paid by Organized Living.

Costner alleged that US Bancorp has refused to pay invoices submitted by Costner, totaling $34,989.45.

{¶ 6} In April and May 2008, Costner and US Bancorp filed cross-motions for summary judgment. Based on Mr. Costner's affidavit, Costner argued that DISC provided maintenance and meter-reading services to Organized Living, which Toshiba and/or US Bancorp was required to provide under the lease; that Costner billed US Bancorp directly for those services; that US Bancorp failed to pay Costner's invoices; and that Costner's right to payment was not contingent upon US Bancorp's receipt of payment from Organized Living. Costner thus argued that there was no genuine issue of material fact as to US Bancorp's liability and that Costner was entitled to judgment as a matter of law.

{¶ 7} In response to Costner's motion, and in support of its own motion for summary judgment, US Bancorp argued that a written vendor agreement governed DISC's rights and obligations vis-à-vis US Bancorp and that the vendor agreement required US Bancorp to pay DISC only after receiving payment from Organized Living, which filed for bankruptcy in 2005. US Bancorp filed a copy of the purported vendor agreement as an attachment to the affidavit of Melanie Pedersen, its customer service collection manager. Although signed by Mr. Costner on behalf of DISC, the vendor agreement is not signed by US Bancorp. The vendor agreement states, "As payment for the subcontracted service and supplies, the service, supply and meter portion of each monthly payment will be remitted to [DISC] on a weekly basis *upon receipt*." (Emphasis added.) Thus, US Bancorp argued that it was under no obligation to pay DISC's outstanding invoices because it has not received payment from Organized Living on US Bancorp's corresponding invoices.

{¶ 8} On August 28, 2008, the trial court issued a decision denying Costner's motion for summary judgment and granting US Bancorp's motion for summary judgment. The trial court concluded that the vendor agreement controlled the relationship between DISC and US Bancorp and that the vendor agreement required US Bancorp to pay DISC only if, and when, it received payment from Organized Living. On September 2, 2010, the trial court denied a motion for reconsideration and rejected Costner's argument that the vendor agreement was unenforceable because it was not signed by a US Bancorp representative. The trial court found that Mr. Costner's signature, coupled with the parties' performance, established mutual assent to the terms of the vendor agreement. Also on September 2, 2010, the trial court entered final judgment, incorporating its August 28, 2008 summary-judgment decision.

{¶ 9} Costner filed a timely notice of appeal and presently asserts the following assignment of error:

The trial court committed prejudicial error in granting summary judgment for [US Bancorp] because there was a genuine issue of material fact and [US Bancorp] was not entitled to summary judgment as a matter of law.

{¶ 10} We review a trial court's entry of summary judgment de novo, applying the same standard as the trial court and conducting an independent review, without deference to the trial court's determination. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, citing *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153; *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41–42, 654 N.E.2d 1327.

{¶ 11} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, quoting *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 2, 24 O.O.3d 1, 433 N.E.2d 615.

{¶ 12} Costner argues that the trial court erred in granting US Bancorp's motion for summary judgment because a factual issue remains as to whether the vendor agreement governs the parties' rights and obligations and because, even if the vendor agreement were enforceable, a genuine issue of material fact remains as to the parties' intentions with respect to the terms of that agreement. In response, US Bancorp argues that the absence of a US Bancorp signature on the vendor agreement does not invalidate that agreement, which it maintains was accepted and performed by both parties. US Bancorp also asserts that the vendor agreement clearly and unambiguously states that US Bancorp's obligation to pay DISC arose only upon US Bancorp's receipt of payment from Organized Living. Additionally, US Bancorp argues that Costner failed to establish the elements of any verbal agreement, as an alternative to the vendor agreement.

{¶ 13} We first consider whether the vendor agreement is an enforceable contract. " 'Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.' " *Kostelnik v. Helper,* 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.* (N.D.Ohio 1976), 436 F.Supp. 409, 414. To declare the existence of a contract, the parties must consent to its terms, there must be a meeting of the minds, and the contract must be definite and certain. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134. The issue whether a contract exists raises a mixed question of fact and law. *DeHoff v. Veterinary Hosp. Operations of Cent. Ohio, Inc.,* 10th Dist. No. 02AP–454, 2003-Ohio-3334, 2003 WL 21470388, ¶ 49, citing *Rudd v. Online Resources, Inc.* (June 18, 1999), 2d Dist. No. 17500, 1999 WL 397351.

{¶ 14} The concepts of "mutual assent" and "meeting of the minds" are related. See, e.g., *DeHoff* at ¶ 47, citing *Renaissance Technologies, Inc. v. Speaker Components, Inc.,* 9th Dist. No. 21183, 2003-Ohio-98, 2003 WL 118509, ¶ 15 (stating that for a contract to exist, there must be mutual assent or a meeting of the minds as to the offer and acceptance). Manifestation of mutual assent requires that each party make a promise or begin to render performance. *Precision Concepts Corp. v. Gen. Emp. & Triad Personnel Servs., Inc.* (July 25, 2000), 10th Dist. No. 00AP–43, 2000 WL 1015114, citing *McSweeney v. Jackson* (1996), 117 Ohio App.3d 623, 631, 691 N.E.2d 303. The "manifestation of assent may be made wholly or partly by written or spoken words, or by other acts or the failure to act." *Precision Concepts Corp.*

{¶ 15} Whether there has been a manifestation of mutual assent and/or a meeting of the minds is a question of fact to be determined from all the relevant facts and circumstances. See *Matusoff & Assoc. v. Kuhlman* (Sept. 28, 1999), 10th Dist. No. 98AP–1405, 2000 WL 192449; *Ginn v. Horn* (Apr. 7, 1987), 10th Dist. No. 86AP–668, 1987 WL 9631 ("there remains a question of fact as to the parties' mutual assent"). Accordingly, this court has reversed entries of summary judgment when issues of fact concerning the existence of a contract remained and when the trial court impermissibly weighed the evidence to determine whether a contract existed between the parties. See *Williams v. Worthington Cylinder Corp.* (Nov. 7, 1995), 10th Dist. No. 95APE03–252, 1995 WL 656915; *Source Servs. Corp. v. Capital Data Sys., Inc.* (July 10, 1990), 10th Dist. No. 89AP–1406, 1990 WL 95371; see also *Gutbrod v. Schuler,* 8th Dist. No. 94228, 2010-Ohio-3731, 2010 WL 3169414. In *Matusoff,* where the record contained conflicting evidence as to the existence and/or the terms of an oral contract between the parties, we stated, "While [the defendant] has presented evidence

that no * * * agreement existed, whether an oral contract existed and what were the terms of that contract are questions that should be resolved by the trier of fact."

{¶ 16} Here, Costner primarily relies on the absence of a US Bancorp signature on the vendor agreement as evidence that the parties did not mutually assent to its terms. In support of its position, Costner cites *Denton v. Pittsburgh Plate Glass Co.* (Dec. 10, 1923), 8th Dist. No. 4682, 1923 WL 2615. There, a contractor submitted the lowest bid for certain work as part of a building project and signed a contract, but the project owner did not sign the contract until months later, by which time the cost of the contractor's materials had increased. When the contractor refused to perform in accordance with the terms of the writing, the project owner hired a replacement contractor and sued the original contractor for additional costs charged by the replacement. The contractor defended by arguing that no contract was formed between it and the project owner, and the court agreed. The Eighth District Court of Appeals held, "As it was the intention of the parties that the contract was to be reduced to writing[,] no contract existed between the parties, as [the project owner] did not sign the contract or accept the offer within a reasonable length of time after the agreement had been signed by the [contractor]." Id.

{¶ 17} In *Robertson v. Rossing* (Feb. 8, 1999), 12th Dist. No. CA98–02–035, 1999 WL 59698, the court similarly concluded that a written instrument not signed by both parties was unenforceable. The court stated as follows: "[T]he offeror drafted the instrument to specifically include signature lines for all parties, the offeree had no bargaining power to change the terms of the contract, the offeror failed to sign the instrument, and the parties had no history of prior dealings. We find that in this case * * *, signatures of all parties were necessary to create a binding contract." The Twelfth District distinguished *Berjian v. Ohio Bell Tel. Co.* (1978), 54 Ohio St.2d 147, 8 O.O.3d 149, 375 N.E.2d 410, in which the Supreme Court of Ohio concluded that a directory-advertising agreement not signed by a customer was effective in the absence of evidence that the parties did not intend to be bound until their agreement was formalized in a writing and when the parties' previous dealings justified the belief that the customer had accepted the terms of the agreement.

{¶ 18} US Bancorp argues that the lack of its signature on the vendor agreement neither demonstrates a lack of mutual assent nor otherwise renders the agreement unenforceable. US Bancorp maintains that Denton is distinguishable because, unlike in Denton, both parties here accepted and performed under the terms of the vendor agreement. US Bancorp correctly notes that there had been no performance by the parties in Denton, but we disagree with US

Bancorp's assertion that no genuine issue of material fact remains with respect to whether the parties performed under the vendor agreement here.

{¶ 19} US Bancorp relies on Pedersen's affidavit, which states that the vendor agreement was intended to govern how the parties would do business with respect to finance leases. Pedersen states that even though no representative of US Bancorp signed it, US Bancorp performed under the terms of the vendor agreement. Despite US Bancorp's assertion to the contrary, Pedersen's conclusory statements do not demonstrate either the parties' intentions with respect to the vendor agreement or that the parties performed pursuant to the vendor agreement. Pedersen was not involved in the supposed negotiation or execution of the vendor agreement and, in fact, had no personal involvement with DISC at all. Pedersen did not know why no one signed the vendor agreement on behalf of US Bancorp. Nor could she explain language in the vendor agreement referring to US Bancorp subcontracting with DISC for the service and supplies or reconcile that language with her belief that DISC contracted directly with Organized Living to provide service and supplies.

{¶ 20} Although the trial court summarily found that "[Costner's] signature, as well as [Costner] and [US Bancorp's] performance under the terms of the Vendor Agreement, was a manifestation of the parties' assent to the agreement," evaluation of US Bancorp's assertion that the parties performed under the terms of the vendor agreement requires review of the contractual language. When examined in light of the contractual language, and in the light most favorable to Costner, as the nonmoving party, the evidence regarding the parties' performance demonstrates that questions of fact remain as to whether the parties mutually assented to the terms of the vendor agreement. We therefore conclude that the trial court impermissibly weighed the evidence in order to determine that factual question on summary judgment.

{¶ 21} The vendor agreement contains two main sections, one dealing with lease transactions and one dealing with copy agreements. The first section states, "WHEREAS [US Bancorp] desire[s] to be the financing Lessor in certain Lease transactions originated by [DISC] and obtain the tax benefits of ownership of the Leased equipment[,] * * * [DISC] and [US Bancorp] agree as follows." Eleven numbered paragraphs follow that introductory language. The second section begins with the following statement: "WHEREAS, [DISC] desire[s] to offer various copy agreements ('copy agreement(s)') to [DISC's] customers with U.S. Bancorp as Owner, whereby [DISC] provide[s], service and supplies, on U.S. Bancorp's behalf at an agreed upon copy volume at an agreed upon cost, this amount to be collected by [US Bancorp] under the copy agreement signed by the customer and remitted in part to [DISC] as provided below[,] NOW THEREFORE, in consideration of the copy agreements to be entered into by the parties

* * * *, we agree as follows." An additional five numbered paragraphs follow that statement.

{¶ 22} Numbered paragraph one in the vendor agreement's first section states, "[DISC] may * * * submit to [US Bancorp] credit information with respect to Lessees with whom [DISC is] negotiating proposed Leases together with either an application signed by the Lessee or some other information indicating to [US Bancorp] the type of equipment involved and the terms of the proposed Lease." The remaining paragraphs in the first section concern the parties' relationship with respect to such leases. In particular, the vendor agreement states that DISC "will be named as owner and the original lessor of the related equipment" but that upon payment, DISC "will assign the Lease to [US Bancorp] without any of [DISC's] obligations." It further states that US Bancorp becomes obligated to purchase the lease and related equipment from DISC upon receipt of a signed lease or other acceptable documentation; "[w]hen [DISC] submit[s] and [US Bancorp] fund[s] the Lease, all of [DISC's] right, title, and interest in and to the Lease and the related equipment, but none of [DISC's] obligations, shall be assigned to [US Bancorp]." Under the vendor agreement, US Bancorp was entitled to invoice the lessee in either DISC or US Bancorp's name. Paragraph seven states that DISC will "discontinue any maintenance, service, supplies, and repair upon notification in writing by U.S. Bancorp of such a request," should a lessee fail to make a required payment.

{¶ 23} The second section of the vendor agreement relates to copy agreements, by which DISC would provide service and supplies to a lessee. That section states:

> The copy agreements to be utilized by [DISC] and [US Bancorp] provide for a single monthly payment for equipment, service and supplies, plus customer must pay an overage charge based on meter readings over and above the copy allowance ("meter"). We agree, however, that U.S. Bancorp shall be funding the equipment portion of the copy agreement only, and subcontracting with [DISC] for the service and supplies which remain your obligation for the term of each copy agreement. * * * [DISC] will retain all overage charges regardless of volume * * *. As payment for the subcontracted service and supplies, the service, supply and meter portion of each monthly payment will be remitted to [DISC] on a weekly basis upon receipt.

As in the first section, DISC was required to discontinue service and supplies, upon written request by US Bancorp, if the customer failed to make a required payment.

{¶ 24} The vendor agreement concludes with several general provisions, concerning electronic vendor payments, nondisclosure, assignability, cancellability, and an integration clause. Finally, the vendor agreement states that it will be

governed by Minnesota law. The vendor agreement contains signature lines for US Bancorp and the "vendor," but the signature line for US Bancorp remains blank.

{¶ 25} Several provisions of the vendor agreement demonstrate a question of fact as to the parties' assent to the terms of that agreement, when read in light of the evidence of the parties' dealings. First, the plain and unambiguous language of the vendor agreement contemplates the execution of a lease between DISC and its customer and the subsequent assignment of that lease to US Bancorp, with DISC's retaining contractual obligations under the lease. Here, however, as Pedersen acknowledges in her affidavit, the lease was entered into solely by Toshiba and Organized Living. Thus, neither DISC nor US Bancorp was originally a party to the lease. Further, while DISC is identified as the supplier, it is not "named as owner and the original lessor" of the subject copying equipment. The record contains no evidence of an assignment of the lease from DISC to US Bancorp (or Toshiba), as contemplated by the terms of the vendor agreement. In fact, the record is devoid of any evidence of a contractual relationship of any kind between DISC and Organized Living. The lease here is inconsistent with the provisions of the vendor agreement and demonstrates an issue of fact regarding DISC and US Bancorp's mutual assent to that agreement.

{¶ 26} Next, the vendor agreement contemplates an independent copy agreement, distinct from a lease, as it refers to those agreements separately and sets forth different terms relating to each. Here, however, the record contains no copy agreement, separate from the lease between Toshiba and Organized Living. Pedersen testified, in her deposition, that the lease here served as the copy agreement referred to in the vendor agreement. Even were a single, consolidated lease and copy agreement consistent with the language of the vendor agreement, however, the parties to the consolidated agreement were Toshiba and Organized Living, not DISC and US Bancorp. Although the vendor agreement suggests that copy agreements will be "signed by the customer," it also refers to "the copy agreements to be entered into by the parties." Because the only parties to the vendor agreement would have been DISC and US Bancorp, the reference to "the Copy Agreements to be entered into by the parties" suggests an agreement between DISC and US Bancorp. Thus, were we to consider the lease here as encompassing both the lease and copy agreement referenced by the vendor agreement, the copy agreement between Toshiba and Organized Living would not be a copy agreement "entered into by the parties" to the vendor agreement.

{¶ 27} Evidence regarding the invoicing of Organized Living and the lack of notification to DISC upon Organized Living's default raises additional questions regarding the parties' assent to, and performance in accordance with, the vendor

agreement. First, while the vendor agreement authorized US Bancorp to invoice a lessee in either US Bancorp or DISC's name, it is undisputed that Organized Living was billed primarily in Toshiba's name. Pedersen could not explain why, even after US Bancorp began billing Organized Living in US Bancorp's own name after Organized Living's default, it subsequently reverted to billing Organized Living as Toshiba. Further, the vendor agreement twice states that DISC may discontinue its provision of service and supplies to a lessee upon written request of US Bancorp, should a lessee fail to make required payments. US Bancorp, however, admitted in its answers to interrogatories that it did not notify DISC to stop providing service and supplies to Organized Living. Contrary to the language of the vendor agreement, Pedersen testified that US Bancorp did not have an obligation to notify DISC before DISC was entitled to stop servicing Organized Living.

{¶ 28} In determining the existence of a genuine issue of material fact, we also note that US Bancorp initially denied the existence of a written agreement with DISC. In a Civ.R. 34 request for production of documents, Costner requested "[a]ll agreements entered into between [DISC] and US Bancorp and all agreements with US Bancorp's divisions, departments and agents." US Bancorp responded, "No agreements exist." It was not until it responded to Costner's motion for summary judgment and moved for summary judgment itself that Costner proffered the vendor agreement and argued that it governed the parties' obligations. Finally, even while arguing that the vendor agreement controls, US Bancorp has not argued, either in the trial court or on appeal, that Minnesota law applies, as expressly stated in the vendor agreement. Both of these facts call into question US Bancorp's assertion that it performed in accordance with the terms of the vendor agreement and that it viewed that agreement as governing the parties' rights and obligations.

{¶ 29} Upon review of the express provisions of the vendor agreement and the evidence of the parties' dealings, we disagree with US Bancorp's assertion that the parties undisputedly accepted and performed under the terms of the vendor agreement. Coupled with the lack of a signature on behalf of US Bancorp, the parties' dealings demonstrate the existence of genuine issues of material fact as to whether the parties manifested mutual assent or whether there was a meeting of the minds with respect to the terms of the vendor agreement. In concluding that the vendor agreement controls, the trial court impermissibly weighed the evidence.

{¶ 30} As an alternative argument in support of the trial court's entry of summary judgment, US Bancorp also contends that Costner failed to establish a verbal agreement between the parties, whereby US Bancorp is liable to DISC even if it has not been paid by Organized Living. The parties' actions, as detailed

in the documentary evidence and in the affidavit and deposition testimony of Mr. Costner and Ms. Pedersen, demonstrate genuine issues of material fact as to the nature and terms of the agreement between US Bancorp and DISC. The lease obligated Toshiba to provide Organized Living with service and supplies but permitted Toshiba to assign those obligations. It is undisputed that DISC performed those obligations on behalf of Toshiba and/or US Bancorp, to whom Toshiba assigned the lease, and that DISC billed US Bancorp directly for those services and supplies. It is further undisputed that US Bancorp paid those invoices from DISC until Organized Living stopped making its monthly payments to US Bancorp. The terms of the agreement between US Bancorp and DISC should be resolved by the trier of fact. *Matusoff.* Accordingly, US Bancorp was not entitled to summary judgment based on a lack of evidence of an oral agreement with DISC.

{¶ 31} For these reasons, we sustain Costner's single assignment of error. Accordingly, we reverse the judgment of the Franklin County Court of Common Pleas and remand this matter to that court for further proceedings consistent with this decision and the law.

Judgment reversed
and cause remanded.

BROWN and DORRIAN, JJ., concur.