[Cite as *Johnson v. Miller*, 2018-Ohio-3739.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


| | | |
|---|---|---|
| GORDON E. JOHNSON, TRUSTEE OF THE JOHNSON FAMILY TRUST, et al., | : | CASE NO. CA2017-12-021 |
| | : | O P I N I O N |
| Plaintiffs-Appellees, | | 9/17/2018 |
| | : | |
| - vs - | : | |
| | : | |
| EMERY J. MILLER, INDIVIDUALLY AND AS TRUSTEE, | : | |
| | : | |
| Defendant-Appellant. | : | |


CIVIL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CVE20130262


James R. Cooper, 33 West Main Street, P.O. Box 4190, Newark, OH 43058-4190, for plaintiffs-appellees

Emery J. Miller, 489 West Main St, Lot 19, Plain City, OH 43064, defendant-appellant, pro se


**M. POWELL, J.**

{¶ 1} Defendant-appellant, Emery J. Miller, appeals from the decision of the Madison County Court of Common Pleas, which rendered judgment in favor of plaintiffs-appellees, Gordon and Karen Johnson, Trustees of the Johnson Family Trust (collectively, "the Johnsons") on the Johnsons' complaint on a promissory note and to foreclose

mortgages. For the reasons described below, this court affirms the lower court's decision.

{¶ 2}  In 2007, Miller, a real estate broker and appraiser, learned of a farm for sale in Madison County known locally as the "Oiler Farm." Miller attempted to purchase the Oiler Farm but for reasons not in the record, the transaction never occurred.

{¶ 3}  Miller was acquainted with Attorney Todd Drown; the two worked together on real estate transactions. In the summer of 2007, Miller began working with Drown on a plan for Drown to purchase and develop the Oiler Farm property.

{¶ 4}  Drown arranged for financing to purchase the property. A bank loaned Drown $110,000 towards the purchase. Drown provided the bank with a promissory note and first mortgage on the property. To finance the remainder of the purchase price, Drown obtained a loan for $95,000 from the Johnsons. Drown's father, Bill Drown, arranged this loan. Bill had previously worked with the Johnsons on similar transactions involving loans for real estate development.

{¶ 5}  Drown prepared the various legal documents that were executed by the parties at the closing. Drown and Miller both executed a $95,000 promissory note in favor of the Johnsons. The note was secured with a second mortgage on the Oiler Farm. Miller provided additional security for the note by executing mortgages in favor of the Johnsons on two separate Madison County parcels he owned. Drown thereafter acquired the Oiler Farm. Miller earned a commission for brokering the deal.

{¶ 6}  Drown later filed for bankruptcy and no development occurred at the property. The bank holding the first mortgage on Oiler Farm initiated foreclosure proceedings, which resulted in a sale of the property. The Johnsons, holders of the second mortgage, received $12,000 in proceeds from the foreclosure sale.

{¶ 7}  Meanwhile, the Johnsons received no payments on the note. The Johnsons delivered a demand letter to Miller. Miller failed to cure. The Johnsons filed suit in 2013.

Miller represented himself throughout the litigation. In 2017, after numerous continuances, a bench trial occurred.

{¶ 8} The Johnsons submitted into evidence the signed promissory note and mortgage documents at issue in the case. Miller did not dispute that he signed the documents and admitted that he had not made any payments on the note. However, Miller claimed that he executed the documents under duress while at the closing. Specifically, Miller claimed that Drown told him at the closing that "Dad (meaning Bill Drown) said you have to."

{¶ 9} Karen Johnson testified that she was at the closing. She did not see Drown at the closing, who had already signed the closing documents. Miller was at the closing and showed her binders that depicted development plans for the Oiler Farm, which impressed her. Miller willingly signed all the real estate documents at the closing.

{¶ 10} The court found that the Johnsons were entitled to judgment on the promissory note and further ordered that the mortgages on Miller's properties be foreclosed. Miller appeals, raising two assignments of error.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN HOLDING THAT THE ALLEGED PROMISSORY NOTE WHICH DEFENDANT WAS FORCED TO SIGN, AS WELL ALSO AS THE ALLEGED STATUTORY MORTGAGE DEFENDANT WAS COERCED TO SIGN ON AUGUST 30, 2007, WERE AND ARE VALID, BINDING AND SUBSISTING CONTRACTS, ENFORCEABLE UNDER OHIO LAW.

{¶ 13} Miller argues that the court erred in finding that the parties entered into enforceable agreements with respect to the promissory note and mortgages because there was insufficient evidence of a meeting of the minds and the agreements were not supported by consideration. The issue of whether a contract exists presents a mixed question of fact

and law. *DeHoff v. Veterinary Hosp. Operations of Cent. Ohio, Inc.*, 10th Dist. Franklin No. 02AP-454, 2003-Ohio-3334, ¶ 48-49; *Rudd v. Online Resources, Inc.*, 2d Dist. Montgomery No. 17500, 1999 Ohio App. LEXIS 2733, *9-10 (June 18, 1999); *McSweeney v. Jackson*, 117 Ohio App.3d 623, 632 (4th Dist.1996). This court reviews the application of the law to the facts de novo. *McSweeney* at *id*. However, the appellate court defers to the factual findings of the trial court if supported by some competent, credible evidence. *Id*.

{¶ 14} The "'[e]ssential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'" *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976). To declare the existence of a contract, the parties must consent to the contractual terms, there must be a meeting of the minds, and the contract must be definite and certain. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991).

{¶ 15} Mutual assent is normally manifested by an offer by one party followed by an acceptance by the other party. *Ohmer v. Mel Farr Ford*, 12th Dist. Butler No. CA2000-12-252, 2001 Ohio App. LEXIS 3551, *6 (Aug. 13, 2001), citing *McSweeney* at 631; Restatement of the Law 2d, Contracts, Section 22 (1981). Whether there has been a manifestation of mutual assent or a meeting of the minds is a question of fact to be determined from all the relevant facts and circumstances. *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 15 (10th Dist.). The "manifestation of assent may be made wholly or partly by written or spoken words, or by other acts or the failure to act." *Precision Concepts Corp. v. Gen. Emp. & Triad Personnel Servs., Inc.*, 10th Dist. Franklin No. 00AP-43, 2000 Ohio App. LEXIS 3322 (July 25, 2000).

{¶ 16} Competent and credible evidence established mutual assent. The court

accepted into evidence the executed promissory note and mortgage documents, all which Miller admitted to signing. Karen Johnson testified that Miller appeared at the closing and willingly signed all the documents. Through the documents, the parties' appearance at the closing, and the signatures executing the documents, the parties demonstrated mutual assent for the Johnsons to loan $95,000 to permit Drown to purchase the Oiler Farm, and for Drown and Miller to provide the Johnsons with collateral to secure a promissory note in the form of mortgages on the Oiler Farm and Miller's separate property. That the Johnsons and Miller never personally discussed the terms of the agreement before arriving at the closing is irrelevant to the issue of whether the parties understood and agreed to the terms of the transaction while at the closing.

{¶ 17} Competent, credible evidence also established sufficient consideration for the agreements. The court found that Miller made efforts to obtain the Oiler Farm himself but was unsuccessful. Miller had a business relationship with Drown and was significantly involved in assisting Drown in obtaining the property. Miller made plans for developing the property. Karen Johnson testified that Miller appeared at the closing and showed her detailed materials concerning the development of the property. Miller told Johnson of a plan to improve the property with a road and subdivide the land into building sites after the road was constructed. Miller obtained a commission for brokering the deal and was positioned to earn additional commissions upon brokering sales of the developed property. This evidence was more than sufficient to establish consideration.

{¶ 18} Miller's assignment of error raises the issue of alleged duress or coercion in signing the agreements although he does not expand upon the issue in his brief. The trial court found that Miller's claim of duress failed for several reasons, including that the statement "Dad says you have to" did not establish duress because Miller was free to walk away from the closing without executing the documents. The court also found that Miller

failed to allege coercive acts by the opposite party to the transactions, i.e., the Johnsons. Competent, credible evidence supported the court's factual findings concerning the lack of duress and Miller's lack of credibility on the subject. This court overrules Miller's first assignment of error.

{¶ 19} Assignment of Error No. 2:

{¶ 20} THE TRIAL COURT [ERRED] IN FINDING THAT WILLIAM TODD DROWN, AN OHIO ATTORNEY, A MAKER ON THE PROMISSORY NOTE, WAS THE SUBJECT OF A BANKRUPTCY PROCEEDING. AT NO TIME WAS ANY EVIDENCE PUT BEFORE THIS COURT THAT WILLIAM TODD DROWN WAS THE SUBJECT OF A BANKRUPTCY PROCEEDING AT THE TIME HE VOLUNTARILY SIGNED THE PROMISSORY NOTE AND RECEIVED $95,000 FROM PLAINTIFFS. AT FIRST GLANCE THIS ERROR MAY APPEAR TO BE HARMLESS ERROR, BUT CONSIDERING THE FACT THAT THE JUDGMENT ENTRY WAS DRAFTED BY COUNSEL FOR PLAINTIFFS, THE ERROR IS CARELESS AND SLOPPY.

{¶ 21} Miller's brief contains no argument concerning this assignment of error. Regardless, bankruptcy proceedings involving Drown have no relevance to the issues before the court on the Johnsons' complaint. This court overrules Miller's second assignment of error.

{¶ 22} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.