[Cite as *Flack v. Avita Health Sys.*, 2022-Ohio-3517.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

JAMIE FLACK,

    PLAINTIFF-APPELLANT,            CASE NO. 3-22-03

    v.

AVITA HEALTH SYSTEM,            O P I N I O N

    DEFENDANT-APPELLEE.

---

Appeal from Crawford County Common Pleas Court
Trial Court No. 20-CV-0062

Judgment Affirmed

Date of Decision: October 3, 2022

---

APPEARANCES:

    *George R. Oryshkewych* for Appellant

    *Taylor C. Knight* for Appellee

**MILLER, J.**

{¶1} This appeal, having been placed on the accelerated calendar, is sua sponte being assigned and considered on the regular calendar pursuant to Loc.R. 12(1). Under the authority of Loc.R. 12(5), we have elected to issue a full opinion in lieu of a judgment entry.

{¶2} The case arises from an injury incurred on September 16, 2019, when plaintiff-appellant, Jamie Flack, a patient at Avita Orthopedic Center, was injured while attempting to traverse a sidewalk on the defendant-appellee's property while using a knee scooter. Flack appeals the February 14, 2022 judgment of the Crawford County Court of Common Pleas granting Avita Health System's motion for summary judgment. For the reasons that follow, we affirm

{¶3} On September 4, 2019, Flack underwent surgery to treat a heel spur on her right foot. (Flack's Oct. 1, 2020 Depo. at 23-24). On September 16, 2019, she attended a post-operative appointment at the Avita Orthopedic Center in Galion, Ohio, which is owned and operated by Avita Health System. (Troiano's Sept. 24, 2020 Depo. at 6-7). Thomas Troiano, the facilities manager for Avita Health System described the Avita location located at 955 Hosford Road, Galion, Ohio. (*Id.* at 6-17). The facility has a single main patient entrance located under a breezeway and a carport. (*Id.* at 13-14, Ex. 1). The patient entrance has sloped concrete leading to the doors, which allows patients to be dropped off at the entrance

of the building. (*Id.* at 14, Ex. 1). Extending to the north and south of the building is a sidewalk leading to the north and south parking lots, respectively. (Troiano's Sept. 24, 2020 Depo. at 6-7). Handicapped parking is located in both the north and the south ends of the parking lots. (Troiano's Sept. 24, 2020 Depo. at 6-7, Ex. 2). According to Troiano, a patient who parked in the north parking lot may use the north sidewalk to access the building. (Troiano's Sept. 24, 2020 Depo. at 14-16). However, patients can access the building from the parking lot without traversing the sidewalk. (*Id.* at 15). In fact, many patients who park in the north parking lot access the building by traveling through the parking lot rather than the sidewalk. (*Id.* at 15-16); (Hyer's Nov. 16, 2020 Depo. at 8-12).

{¶4} Troiano stated that, prior to September 16, 2019, he observed some wear on the north sidewalk and determined that it should be replaced for "aesthetic purposes." (Troiano's Sept. 24, 2020 Depo. at 16). According to Troiano, in August 2019, while at the facility on other business, he noticed an inconsistency in the color of the sidewalk. (*Id.* at 16-17). When he investigated further, he also determined some of the concrete had worn or eroded away and decided to have the sidewalk repaired because it "didn't look good." (*Id.* at 17). Troiano recalled putting the tip of his finger on the edge of one of the deteriorated spots to determine its depth and estimated that the depth was approximately one-eighth to three-sixteenths of an inch and was less than a quarter of an inch. (*Id.* at 33-34). When presented with a photo

of one section of the sidewalk, Troiano admitted that the erosion spanned nearly the entire horizontal length of the sidewalk joint.  (Troiano's Sept. 24, 2020 Depo. at 28, Ex. 7).  However, Troiano maintained that, due to its shallow depth, he did not view the imperfections in the sidewalk as a trip hazard.  (*Id.* at 28-29).  When the sidewalk was repaired subsequent to Flack's fall, Troiano stated that approximately ten sections of the sidewalk were replaced with new concrete.  (*Id.* at 20-21).

{¶5} At the time of her post-operative appointment on September 16, 2019, Flack had been instructed by her physician not to bear weight on her right foot due to her recent surgery, and Flack was ambulating with the assistance of a knee scooter.  (Flack's Oct. 1, 2020 Depo. at 24-25).  She purchased the knee scooter from a family friend and did not receive an instruction manual or training relating to its use or operation.  (*Id.* at 28-29).  However, Flack stated that it was "obvious" to her how to operate the equipment.  (*Id.* at 28).  Flack's physician prescribed a wheelchair rather than a knee scooter; but, Flack stated that she discussed the option of a knee scooter with her operating physician who indicated that it was a suitable option.  (*Id.* at 24-25, 28-29).   Additionally, her operating physician observed her using the knee scooter during the post-operative appointment on September 16, 2019 and did not comment.  (*Id.* at 29).  According to Flack, the post-operative appointment on September 16, 2019 was the first time she used the knee scooter outside of her residence.  (*Id.* at 28).

-4-

{¶6} Flack's daughter and son-in-law accompanied her to the post-operative appointment on September 16, 2019. (*Id.* at 27). When Flack arrived at the appointment, her daughter pulled the vehicle up to the car port at the main entrance of the building and her son-in-law assisted Flack into the building. (*Id.* at 27-28). Once Flack was inside the building, her daughter parked her vehicle in a handicapped spot on the north parking lot. (*Id.*).

{¶7} Following the appointment, Flack traversed along the sidewalk leading to the north parking lot. (*Id.* at 29-30). Flack led the way and her daughter and son-in-law followed behind, carrying her purse and belongings. (*Id.* at 34-35). According to Flack, as she traversed the sidewalk leading to the north side of the parking lot, the knee scooter "just stopped on [her]" and she flipped over the handlebars of the scooter and onto the concrete sidewalk. (*Id.* at 30). Flack stated that she landed on the ground on her bottom, but her right heel hit the concrete when she landed. (*Id.* at 34-35). Subsequent medical testing revealed that Flack tore her right Achilles tendon. (*Id.* at 38). Several days later, she underwent surgery to repair the injury. (*Id.* at 38-39).

{¶8} According to Flack, despite having been to Avita Orthopedic Center approximately three times prior, she had never traveled on the sidewalk to the north parking lot before her injury. (*Id.* at 29-30). Rather, when entering and exiting the building on previous locations, she traveled through the parking lot to the front door.

(*Id.*). Flack admitted that, prior to her fall, she observed the imperfection in the area of the sidewalk where the wheel of her scooter became caught in the concrete and stated that the portion of the sidewalk was "all broken up." (*Id.* at 30-34).

{¶9} On April 1, 2020, Flack filed a complaint against Avita Health System asserting a claim of negligence. On April 21, 2020, Avita Health System filed its answer to the complaint.

{¶10} Avita Health System filed a motion for summary judgment on April 15, 2021. In its motion, Avita Health System argued that it did not owe Flack a duty to warn of the alleged defect in the sidewalk that caused her fall. Specifically, Avita Health System argued the hazard was open and obvious. On May 26, 2021, Flack filed her response to Avita Health System's motion for summary judgment. On June 4, 2021, Avita Health System filed its reply in support of its motion for summary judgment.

{¶11} On February 14, 2022, the trial court granted Avita Health System's motion for summary judgment. Flack filed her notice of appeal on February 24, 2022. She raises one assignment of error for our review.

**Assignment of Error**

**The trial court erred as a matter of law, by granting summary judgment against plaintiff/appellant.**

{¶12} In her sole assignment of error, Flack argues the trial court erred by granting Avita Health System's motion for summary judgment. Specifically Flack

argues that reasonable minds could conclude the condition of the sidewalk constituted negligence per se. She also argues that the danger posed by the spalled concrete was not open and obvious to her and that attendant circumstances preclude the application of the open and obvious doctrine.

{¶13} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25, citing *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 10 (10th Dist.). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

{¶14} "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.*, citing *Dresher* at 292-

293. "The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings." *Id.*, citing *Dresher* at 292 and Civ.R. 56(E).

{¶15} Material facts are those facts "'that might affect the outcome of the suit under the governing law.'" *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). "Whether a genuine issue exists is answered by the following inquiry: [d]oes the evidence present 'a sufficient disagreement to require submission to a jury' or is it 'so one-sided that one party must prevail as a matter of law[?]'" *Id.*, quoting *Anderson* at 251-252, 106 S.Ct. 2512.

{¶16} "To establish a cause of action for negligence, a plaintiff must show the existence of a duty, breach of that duty, and an injury proximately caused by the breach." *Daley v. Fryer*, 3d Dist. Allen No. 1-14-48, 2015-Ohio-930, ¶ 16, citing *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 680 (1998). To defeat a defendant's properly supported motion for summary judgment in a negligence action, the plaintiff must first establish that the defendant owed him a duty. *Id.*, citing *Kaeppner v. Leading Mgt., Inc.*, 10th Dist. Franklin No. 05AP-1324, 2006-Ohio-3588, ¶ 9. "The plaintiff must then present evidence from which reasonable minds could conclude that the defendant breached that duty and that the breach was the proximate cause of the plaintiff's injuries." *Id.*

{¶17} Flack argues that defendant-appellee was negligent for failing to properly maintain the premises and warn her of the danger posed by imperfections in the north sidewalk of the facility.

{¶18} "A shopkeeper ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 5, citing *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 204 (1985) and *Jackson v. Kings Island*, 58 Ohio St.2d 357, 360 (1979). "However, this duty does not require landowners to insure the safety of invitees on their property." *Lang v. Holly Hill Motel, Inc.,* 122 Ohio St.3d 120, 2009-Ohio-2495, ¶ 11. "[T]he 'open and obvious' doctrine states that an owner or occupier of property owes no duty to warn invitees entering the property of open and obvious dangers on the property." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644 (1992). "[T]he open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." *Armstrong* at ¶ 5. "The 'open and obvious' doctrine states that an owner or occupier of property owes no duty to warn invitees entering the property of open and obvious dangers on the property." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644 (1992).

{¶19} "In general, '[o]pen-and-obvious dangers are those not hidden, concealed from view, or undiscoverable upon ordinary inspection[.]'" *Shipman v.*

*Papa John's*, 3d Dist. Shelby No. 17-14-17, 2014-Ohio-5092, ¶ 22, quoting

*Thompson v. Ohio State Univ. Physicians, Inc.*, 10th Dist. Franklin No. 10AP-612,

2011-Ohio-2270, ¶ 12. "However, an individual 'does not need to observe the

dangerous condition for it to be an "open-and-obvious" condition under the law;

rather, the determinative issue is whether the condition is observable.'" *Id.*, quoting

*Thompson*, at ¶ 12. "Thus, '[e]ven in cases where the plaintiff did not actually notice

the condition until after he or she fell, [courts have] found no duty where the plaintiff

could have seen the condition if he or she had looked.'" *Id.*, quoting *Thompson* at

¶ 12.

{¶20} "In most situations, whether a danger is open and obvious presents a

question of law." *Carnes*, 2011-Ohio-4467, at ¶ 16, citing *Lang,* 2007-Ohio-3898,

at ¶ 23, citing *Hallowell v. Athens*, 4th Dist. Athens No. 03CA29, 2004-Ohio-4257,

¶ 21 and *Nageotte v. Cafaro Co.*, 160 Ohio App.3d 702, 2005-Ohio-2098, ¶ 28 (6th

Dist.). "There may, however, be situations where disputed facts may exist regarding

the openness and obviousness of a hazard, possibly creating an issue of material

fact." *Id.*, citing *Ray v. Wal-Mart Stores, Inc.*, 4th Dist. Washington No. 08CA41,

2009-Ohio-4542, ¶ 29 and *Lang* at ¶ 23. For example, the existence of "attendant

circumstances" may create an issue of material fact. *Id.*

{¶21} "Attendant circumstances may exist which distract an individual from

exercising the degree of care an ordinary person would have exercised to avoid the

danger." *Id.* at ¶ 17, citing *Aycock v. Sandy Valley Church of God*, 5th Dist. Tuscarawas No. 2006 AP 09 0054, 2008-Ohio-105, ¶ 26, citing *McGuire v. Sears, Roebuck & Co.*, 118 Ohio App.3d 494, 499 (1st Dist.1996). "An attendant circumstance is usually an active event as opposed to a static condition." *Id.* This court recognized that an "attendant circumstance" is defined as:

> "[A] factor that contributes to the fall and is beyond the control of the injured party. * * * The phrase refers to all facts relating to the event, such as time, place, surroundings or background and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event. * * * However, '[b]oth circumstances contributing to and reducing the risk of the defect must be considered.'"

*Williams v. Lowe's of Bellefontaine*, 3d Dist. Logan No. 8-06-25, 2007-Ohio-2045, ¶ 18, quoting *Benton v. Cracker Barrel Old Country Store, Inc.*, 10th Dist. Franklin No. 02AP1211, 2003-Ohio-2890, ¶ 17, quoting *Sack v. Skyline Chili, Inc.*, 12th Dist. Warren No. CA2002-09-101, 2003-Ohio-2226, ¶ 20.

{¶22} "To serve as an exception to the open-and-obvious doctrine, an attendant circumstance must be 'so abnormal that it unreasonably increased the normal risk of a harmful result or reduced the degree of care an ordinary person would exercise.'" *Shipman*, 2014-Ohio-5092, at ¶ 29, quoting *Mayle v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 09AP-541, 2010-Ohio-2774, ¶ 20. "[A]ttendant circumstances are facts that significantly enhance the danger of the hazard.'" *Id.*, quoting *Haller v. Meijer, Inc.*, 10th Dist. Franklin No. 11AP-290,

2012-Ohio-670, ¶ 10. "Furthermore, the attendant circumstance must be an "'unusual circumstance of the property owner's making.'"" *Id.*, quoting *Haller* at ¶ 10, quoting *McConnell v. Margello*, 10th Dist. Franklin No. 06AP-1235, 2007-Ohio-4860, ¶ 17. "'Attendant circumstances do not, though, include regularly encountered, ordinary, or common circumstances.'" *Id.*, quoting *Colville v. Meijer Stores Ltd. Partnership*, 2d Dist. Miami, No. 2011-CA-011, 2012-Ohio-2413, ¶ 30. Also, "'[a]ttendant circumstances do not include the individual's activity at the time of the fall unless the individual's attention was diverted by an unusual circumstance of the property owner's making.'" *Meyer v. Dayton*, 2d Dist. Montgomery No. 27002, 2016-Ohio-8080, ¶ 19, quoting *Margello*, 2007-Ohio-4860, at ¶ 17.

{**¶23**} We will first address whether the hazard was open and obvious. Construing the evidence in a light most favorable to Flack, we conclude that that the open-and-obvious doctrine obviated any duty owed to Flack. There is no genuine issue of material fact that the condition of the sidewalk was so obvious and apparent to Avita Health System's invitees that they were reasonably expected to discover it and protect themselves against it. On the day Flack fell in the parking lot, the weather conditions were clear and sunny. (Flack's Oct. 1, 2020 Depo. at 29). Flack was able to observe the sidewalk in front of her, even while using the knee scooter. (*Id.* at 30). Flack's daughter and son-in-law were walking behind her at the time of the injury and were carrying her belongings, including her purse and phone. (*Id.* at

30, 34-35). Importantly, Flack admitted in her deposition that she actually saw the worn area of the sidewalk prior to her fall. (*Id.* at 34). Additionally, photos of the condition of the sidewalk at the time of Flack's injury demonstrate that the imperfection in the sidewalk would have been discoverable upon ordinary inspection. (*Id.* at 31-32, Ex. A). That Flack actually observed the condition of the sidewalk, yet chose to attempt to traverse it anyway does not take away from its open and obvious nature. *See Williams v. Lowe's of Bellefontaine*, 3d Dist. Logan. No. 8-06-25, 2007-Ohio-2045, ¶ 16 ("[D]ue to the open and obvious nature of the hazard, [the plaintiff] was able to avoid the hazard to protect herself, even if she did not do so."). Accordingly, the sidewalk presented an open-and-obvious danger. *See Cramer v. McCray*, 2d Dist. Montgomery No. 20791, 2005-Ohio-5507, ¶ 13 (finding a crack in the sidewalk was an open and obvious danger where the defect was visible to all persons using the walkway).

{¶24} In an attempt to avoid the application of the open-and-obvious doctrine to the present case, Flack invites us to adopt a strained definition of an "obvious" danger. Specifically, Flack argues that the hazard was not obvious *to her* because she was using a knee scooter. However, this argument fails. The record is clear that Flack chose to use a knee scooter she procured from a friend rather than the wheelchair that was prescribed by her physician. Additionally, Flack did not receive instructions or training on the use of the knee scooter despite her statement

that its use was obvious. Furthermore, Flack had never used the scooter outside of her residence prior to the day of her injury. Accordingly, although Flack may not have actually perceived the danger posed by the condition of the sidewalk, the open-and-obvious doctrine is an objective rather than a subjective standard. "The determination of whether a particular danger is open and obvious does not revolve around the plaintiff's peculiar sensibilities or whether the plaintiff actually observed the danger." *Ray v. Wal-Mart Stores, Inc.*, 4th Dist. Washington No. 08CA41, 2009-Ohio-4542, ¶ 22. "Instead, the question is whether, under an objective standard, the danger would have been discernible to a reasonable person." *Id.* Accordingly, the imperfection in the sidewalk was still open and obvious, despite Flack's failure to recognize the hazard that it posed. As the trial court correctly noted in its judgment entry granting summary judgment:

> [S]imple reason tells us that a cracked/uneven sidewalk would pose a much more obvious danger to a person using a wheelchair or a knee scooter than an ordinary pedestrian. It would be obvious that using a wheeled device to travel over a cracked/uneven sidewalk would most likely have a jarring effect on the person. This jarring effect alone could cause the person to fall. It would also be obvious that the wheels of the device could become lodged in a crack in the sidewalk.

(Doc. No. 27).

{¶25} Having determined that the condition of the sidewalk was open and obvious, we next turn to Flack's argument that attendant circumstances bar the application of the open-and-obvious doctrine. In support of her argument that

-14-

attendant circumstances bar application of the open-and-obvious doctrine, Flack argues that the fact that the premises was visited by people with difficulty ambulating, that Flack was on a knee scooter, and that multiple sections of the sidewalk were damaged constituted attendant circumstances. However, we find that these circumstances are not "attendant circumstances" as this court has defined them. By Flack's own admission, she was not distracted and her attention was not diverted at the time of her injury. (Flack's Oct. 1, 2020 Tr. at 33-34). Furthermore, the details Flack relies on in support of her argument are not those that would distract her from observing the danger or make the danger less obvious to her. Additionally, the circumstances outlined by Flack were not created by Avita Health System. Accordingly, we do not find attendant circumstances present which would bar the application of the open-and-obvious doctrine. *See Nicoll v. Centerville City Schools*, 2d Dist. Montgomery No. 27637, 2018-Ohio-36, ¶ 22-23 (finding no attendant circumstances where the plaintiff tripped on a sidewalk while traversing the pathway with her children).

**{¶26}** Finally, Flack argues that Avita Health System's alleged failure to properly maintain the sidewalk constitute negligence per se. "The concept of negligence per se allows the plaintiff to prove the first two prongs of the negligence test, duty and breach of duty, by merely showing that the defendant committed or omitted a specific act prohibited or required by statute." *Lang*, 2009-Ohio-2495, at

¶ 15. However, the plaintiff in a negligence per se action must still prove proximate cause and damages. *Sikora v. Wenzel*, 88 Ohio St.3d 493, 496 (2000). Additionally, "a negligence-per-se violation will not preclude defenses and excuses, unless the statute clearly contemplates such a result." *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, ¶ 23.

{¶27} Flack's negligence-per-se claims are based on provisions of the City of Galion Ordinances and provisions of the Americans with Disabilities Act ("ADA").

{¶28} Flack argues that Avita Health System violated Galion Ordinance 909.01 which provides, "All sidewalks, curbing, and gutters within the City shall be kept in repair by the owner of the property abutting thereon by constructing, repairing or relaying of the same, as may be required by the city." Galion Ordinance 903.02 defines a sidewalk as "an improved surface for carrying pedestrian traffic on a public right of way."

{¶29} Flack alleges that due to the condition of the sidewalk on its property, Avita Health System violated Galion Ordinance 909.01 resulting in negligence per se. However, we do not find that the walkway where Flack was injured constitutes a sidewalk pursuant to definition provided in Galion Ordinance 903.01. Rather, the sidewalk was located between Avita Health System's private parking lot and office building. Accordingly, it is not a "public right of way" as contemplated by Galion

Ordinance 903.01. Thus, by definition, Avita Health System was not in violation of Galion Ordinance 909.01.

{¶30} Next, Flack argues that Avita Health System violated ADA Section 302.1 which states, in pertinent part, that "[f]loor and ground surfaces shall be stable, firm, and slip resistant." Flack argues that the eroded nature of the sidewalk, including concrete "spalling" constituted a violation of this section Specifically, Flack argues that the gravel-like fragments or spalls of concrete which appear when concrete is slowly broken down into small flakes, and which were present in the area of walkway where Flack was injured, violate ADA's requirement for stable, firm, slip resistant surfaces. We disagree. An advisory note to ADA Section 302.1 provides that "[a] stable surface is one that remains unchanged by contaminants or applied force, so that when the contaminant or force is removed, the surface returns to its original condition. A firm surface resists deformation by either indentations or particles moving on its surface."

{¶31} Flack fails to provide authority supporting its contention that concrete spalling on a sidewalk violates ADA Section 302.1. Furthermore, we do not find authority supporting Flack's argument. Rather, the facts present here establish that the sidewalk at issue was stable and firm. Furthermore, although Flack's argument with respect to ADA Section 302.1 presumes that concrete spalling was the cause of her fall, her statements made in her deposition establish that her fall was caused

by the wheel of the scooter becoming lodged in a crack in the concrete rather than concrete spalling. (Flack's Oct. 1, 2020 Depo. at 34). Accordingly, we do not find that Avita Health System violated ADA Section 302. Having found no genuine issue of material fact that the imperfection in the area of the sidewalk where Flack fell was open and obvious, we do not find that Avita Health System breached a duty of care to Flack. Therefore, we find that the trial court did not err in granting summary judgment in favor of Avita Health System.

**{¶32}** Flack's assignment of error is overruled.

**{¶33}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Crawford County Court of Common Pleas.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**